# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-40321

United States Court of Appeals
Fifth Circuit

**FILED**
June 5, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

GERARDO HERNANDEZ–RODRIGUEZ,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before CLEMENT, PRADO, and ELROD, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Defendant–Appellant Gerardo Hernandez–Rodriguez appeals the district court's application of a sixteen-level "crime of violence" sentencing enhancement based on his prior Louisiana aggravated battery conviction. Addressing the question we left open in *United States v. Herrera–Alvarez*, 753 F.3d 132, 142 n.5 (5th Cir. 2014), we conclude that the least culpable means of committing aggravated battery under Louisiana law involves conduct beyond the scope of the generic, contemporary meaning of "aggravated assault." We therefore vacate Hernandez–Rodriguez's sentence and remand for resentencing.

No. 14-40321

## I. FACTUAL AND PROCEDURAL BACKGROUND

In November 2013, Hernandez–Rodriguez pleaded guilty to one count of illegal reentry. The Presentence Investigation Report (PSR) assessed a base offense level of eight, then added a sixteen-level sentence enhancement on the ground that Hernandez–Rodriguez's 2006 Louisiana conviction for aggravated battery qualified as a crime of violence within the meaning of U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2L1.2(b)(1)(A)(ii).[1]

Hernandez–Rodriguez objected to the sixteen-level enhancement, arguing that his prior Louisiana conviction for aggravated battery did not constitute a crime of violence under the Guidelines. The district court overruled Hernandez–Rodriguez's objection, adopted the PSR, and assessed a within-Guidelines sentence of forty-one months of imprisonment.[2] Hernandez–Rodriguez timely appealed.

## II. JURISDICTION

The district court had jurisdiction over the original criminal proceedings pursuant to 18 U.S.C. § 3231. We have jurisdiction to review the district court's judgment and sentence pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

---

[1] After a three-level reduction for acceptance of responsibility, Hernandez–Rodriguez's total offense level was twenty-one. This offense level, coupled with Hernandez–Rodriguez's criminal history category of II, resulted in an advisory Guidelines sentencing range of forty-one to fifty-one months of imprisonment.

[2] The Probation Office responded to Hernandez–Rodriguez's objection by submitting "court minutes" for the Louisiana conviction, which showed that Hernandez–Rodriguez had been indicted for attempted murder but pled guilty to the reduced charge of aggravated battery. The Probation Office was unable to procure a copy of the judgment or any other state-court record that would establish the specific crime to which Hernandez–Rodriguez pled guilty. The district court found the court minutes "sufficient" to support the enhancement. On appeal, Hernandez–Rodriguez does not contest the sufficiency of these records to support the fact of conviction.

## III. DISCUSSION

The only issue presented in this appeal is whether Hernandez–Rodriguez's Louisiana aggravated battery conviction constitutes a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii). As Hernandez–Rodriguez preserved error, we review this question of law de novo. *See United States v. Mungia–Portillo*, 484 F.3d 813, 815 (5th Cir. 2007).

### A.     The Crime of Violence Framework

Section 2L1.2(b)(1)(A)(ii) mandates a sixteen-level increase to a defendant's base offense level when the defendant previously has been deported following "a conviction for a felony that is . . . a crime of violence." The commentary to the Guidelines, in turn, defines "crime of violence" as (1) any offense in a list of enumerated offenses, including "aggravated assault," or (2) "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).[3]

"This court uses different tests when analyzing whether a particular offense amounts to a [crime of violence], and the test used depends on whether the offense is an enumerated one or has physical force as an element." *United States v. Moreno–Florean*, 542 F.3d 445, 449 (5th Cir. 2008). We apply a categorical approach derived from *Taylor v. United States*, 495 U.S. 575 (1990), to determine whether the offense of conviction contains as an element the use of force.[4] *Moreno–Florean*, 542 F.3d at 449. To this end, we "examine the elements of the offense, rather than the facts underlying the

---

[3] The Guidelines commentary "is binding and is equivalent in force to the Guidelines language itself as long as the language and the commentary are not inconsistent." *United States v. Esparza–Perez*, 681 F.3d 228, 229 n.3 (5th Cir. 2012).

[4] We refer to this as the "force offense" or "use of force" prong.

No. 14-40321

conviction or the defendant's actual conduct." *United States v. Carrasco–Tercero*, 745 F.3d 192, 195 (5th Cir. 2014) (internal quotation marks omitted).

In comparison, we apply a "common sense" approach that looks to the "generic, contemporary meaning" of an offense listed in § 2L1.2 to assess whether the offense of conviction amounts to that enumerated offense.[5] *United States v. Esparza–Perez*, 681 F.3d 228, 229 (5th Cir. 2012). To discern this "plain, ordinary meaning," we rely on sources including the Model Penal Code, Professor LaFave's *Substantive Criminal Law* treatise, modern state statutes, and dictionaries. *Mungia–Portillo*, 484 F.3d at 816; *see also Esparza–Perez*, 681 F.3d at 229. "State-law labels do not control this inquiry because the [crime of violence] adjustment incorporates crimes with certain elements, not crimes that happen to have the same label under state law." *Esparza–Perez*, 681 F.3d at 230 (alteration in original) (internal quotation marks omitted). If the defendant was convicted under a statute that is "narrower than the generic crime" or that mirrors the generic definition with only "minor variations," the enhancement may stand. *United States v. Herrera*, 647 F.3d 172, 176 (5th Cir. 2011). But if the statute of conviction "encompasses prohibited behavior that is not within the plain, ordinary meaning of the enumerated offense, the conviction is not a crime of violence as a matter of law." *Esparza–Perez*, 681 F.3d at 230 (internal quotation marks omitted).[6]

Under both the categorical and common sense approaches, "if the statute of conviction contains a series of disjunctive elements, this court may look beyond the statute to certain records made or used in adjudicating guilt to determine which subpart of the statute formed the basis of the conviction."

---

[5] We refer to this as the "enumerated offense" prong.

[6] As is evident from this explanation, the "common sense" approach is also "categorical" in nature because it requires us to compare the statutory definition of the crime—and not the defendant's conduct—to the generic, contemporary meaning of the enumerated offense. *See Esparza–Perez*, 681 F.3d at 230.

4

*Moreno–Florean*, 542 F.3d at 449. Qualifying records "are 'generally limited to . . . the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.'" *Herrera–Alvarez*, 753 F.3d at 138 (quoting *Shepard v. United States*, 544 U.S. 13, 16 (2005)). If the statute of conviction cannot be narrowed using such *Shepard*-compliant documents, we must determine whether the "least culpable act constituting a violation of that statute" necessarily entails the use of force or constitutes the enumerated offense. *United States v. Gonzalez–Ramirez*, 477 F.3d 310, 315–16 (5th Cir. 2007).

## B.    The Louisiana Conviction

The Louisiana statute under which Hernandez–Rodriguez was convicted defines aggravated battery as "a battery committed with a dangerous weapon." La. Rev. Stat. § 14:34. The criminal code, in turn, defines battery as either (1) "the intentional use of force or violence upon the person of another" or (2) "the intentional administration of a poison or other noxious liquid or substance to another." *Id.* § 14:33. The term "'dangerous weapon' includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." *Id.* § 14:2(A)(3).

### 1.    *The Force Offense Prong*

In *Herrera–Alvarez*, this Court held that a Louisiana conviction for aggravated battery qualifies as a crime of violence under the force offense prong of § 2L1.2, but *only if* the offense can be narrowed to exclude the poison alternative. *See* 753 F.3d at 139, 141. We first observed that § 14:34 is disjunctive because it "in effect criminalizes two distinct offenses—an aggravated battery committed by the intentional administration of poison or other noxious liquid or substance and an aggravated battery committed by

the intentional use of force or violence upon the person of another." *Id.* at 140. Next, we reasoned that because the "force" required to make an offense a crime of violence under the force offense prong of § 2L1.2 is "synonymous with destructive or violent force," *id.* at 138 (quoting *United States v. Dominguez*, 479 F.3d 345, 348 (5th Cir. 2007)) (internal quotation marks omitted), the administration of poison "does not necessarily entail the use of physical force" contemplated by § 2L1.2, *id.* at 139. As a result, we concluded that if § 14:34 could not be narrowed to exclude the possibility of an aggravated battery committed with poison, then a conviction for that offense could not qualify for the enhancement as a force offense. *See id.* at 139, 141. Because the record in that case contained a charging instrument—a *Shepard*-compliant document—reflecting that the defendant had committed the offense using a knife, we were able to rule out the poison alternative and in turn conclude that the conviction comprised a force offense. *Id.* at 140–41. Critically, this disposition enabled us to reserve judgment on the Government's alternative enumerated offense argument. *Id.* at 142 n.5.

The parties here agree that there are no *Shepard*-compliant documents to identify the subpart of the statute that formed the basis of Hernandez–Rodriguez's conviction. Accordingly, unlike in *Herrera–Alvarez*, we cannot exclude the possibility that Hernandez–Rodriguez's conviction was based on the administration-of-poison alternative within § 14:34—"the least culpable act" to violate the statute, *Gonzalez–Ramirez*, 477 F.3d at 316—and Hernandez–Rodriguez's conviction thus cannot satisfy the force offense prong.

### 2.     *The Enumerated Offense Prong*

This does not end our inquiry, however. We must now turn to the question we left open in *Herrera–Alvarez* and decide, under the common sense

approach, whether the "least culpable act constituting a violation" of § 14:34 falls outside of the generic, contemporary meaning of aggravated assault.

Our "primary source" for the ordinary meaning of this offense is the Model Penal Code, *United States v. Torres–Diaz*, 438 F.3d 529, 536 (5th Cir. 2006), which provides:

> A person is guilty of aggravated assault if he:
> (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life; or
> (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.

Model Penal Code § 211.1(2). The Code further defines "deadly weapon" as "any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury." *Id.* § 210.0(4). Looking also to other approved sources, we have noted that "[t]he generic, contemporary meaning of aggravated assault is an assault carried out under certain aggravating circumstances," and that "[a]ssault, in turn, requires proof that the defendant either caused, attempted to cause, or threatened to cause bodily injury or offensive contact to another person." *Esparza–Perez*, 681 F.3d at 231 (citing, *inter alia*, *Black's Law Dictionary* 130 (9th ed. 2009); Wayne R. LaFave, 2 *Substantive Criminal Law* § 16.3 (2d ed. 2014)).

Hernandez–Rodriguez contends that the Louisiana statute is broader than the generic, contemporary definition of aggravated assault for two principal reasons. First, the Louisiana offense is one of general intent, while the generic offense of aggravated assault requires a showing of specific intent. Second, the criminal intent under Louisiana law attaches to the defendant's conduct (i.e., the intentional *use of force* or *administration of*

*poison*) rather than to the result of that conduct (i.e., causing *bodily injury*); the opposite is true of the generic offense.

The Government counters that the elements of an aggravated battery under § 14:34 are a "[c]ategorical [m]atch" to the elements of a generic aggravated assault. In the Government's view, the distinction between general and specific intent is immaterial because the Louisiana statute, when read in combination with the definition of "dangerous weapon," establishes sufficiently similar criminal intent to satisfy the common sense test. Put differently, any differences between the statutes amount to "minor variations," *Herrera*, 647 F.3d at 176, that do not preclude a finding of equivalence. Although "[i]t may be possible to conjure up scenarios in which there is a meaningful difference between" the offense definitions, the Government continues, Hernandez–Rodriguez cannot show "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of [the] crime," *Gonzalez v. Duenas–Alvarez*, 549 U.S. 183, 193 (2007).

After comparing the statutes and reviewing Louisiana and Fifth Circuit case law, we are persuaded that the offenses are meaningfully different, and, therefore, a conviction for the least culpable violation of § 14:33 does not constitute the enumerated offense of aggravated assault. As Hernandez–Rodriguez points out, the Louisiana offense of aggravated battery is a general intent offense. *State v. Howard*, 94-0023 (La. 6/3/94); 638 So. 2d 216, 217. To establish general intent, the State need only make "a showing that 'the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.'" *Id.* (quoting La. Rev. Stat. § 14:10(2)). As a result, the "criminal intent necessary to sustain a conviction is shown by the very doing

of the acts which have been declared criminal." *Id.* (internal quotation marks omitted). Moreover, the requisite intent relates only to the defendant's conduct: "The crime requires neither the infliction of serious bodily harm nor the intent to inflict serious injury." *Id.*

In contrast, the generic, contemporary definition of aggravated assault, exemplified in the Model Penal Code, requires specific intent to cause bodily injury. Model Penal Code § 211.1(2). Focusing on the "deadly weapon" alternative—the analogue to the Louisiana statute's poison offense—the defendant must either "attempt to cause" or "purposely or knowingly cause" bodily injury. *Id.* With regard to the result of one's conduct, "purposely" signifies that it is the defendant's "conscious object" to cause that result, and "knowingly" signifies that the defendant "is aware that it is practically certain that his conduct will cause" that result. *Id.* § 2.02(2)(a)–(b). Attempt, in turn, requires the same "kind of culpability otherwise required for the commission of the crime," and, "when causing a particular result is an element of the crime," the defendant must act "with the purpose of causing or with the belief that it will cause such result." *Id.* § 5.01(1)(b).

The pertinent distinctions between the statutes are made plain in *State v. Smith*, 39,698 (La. App. 2 Cir. 6/29/05); 907 So. 2d 192. In *Smith*, the defendant challenged the sufficiency of the evidence to support his aggravated battery conviction for spraying the victim with chemicals from a crop-dusting plane. 907 So. 2d at 196. The incident occurred when the defendant was defoliating a cotton field adjacent to the victim's property using several caustic chemicals. *Id.* at 194. The victim testified that the defendant intentionally sprayed him, citing the defendant's unusual flight path; the defendant maintained that any chemical contact with the victim was accidental due to drift. *Id.* As a result of the exposure, the victim

experienced skin irritation, a headache, and nausea, and a state witness testified that "a 'very large dose' [of the chemicals] could kill a person." *Id.* The court of appeals upheld the verdict. *Id.* at 198. It noted that in order to convict the defendant of aggravated battery, the State needed to prove only that "(1) the defendant intentionally administered a poison or other noxious liquid or substance to [the victim] by spraying him with the defoliants . . . and (2) the defoliants were poisonous or noxious substances used in a manner likely or calculated to cause death or great bodily harm." *Id.* at 197. The sole disputed factual issue was "whether Yates was intentionally sprayed," *id.*, and the court found that the trier of fact reasonably credited the victim's testimony and circumstantial evidence to prove the requisite intent, *id.* at 198. As the State urged, the "dangerous weapon" element of the offense was established by evidence that "[the victim] suffered harmful side effects and [the state witness] testified that the chemicals could cause death or great bodily harm." *Id.* at 196; *see id.* at 198.

On this evidence, the Model Penal Code would not permit a conviction for aggravated assault under the "deadly weapon" prong of § 211.1(2). There is no indication in *Smith* that the defendant was shown to have the "conscious object" to cause bodily injury to the victim or that he was aware of a "practical[] certain[ty]" that it would result. *See* Model Penal Code §§ 2.02(2), 211.1(2). In fact, the State secured a conviction through proof only that (1) the defendant intentionally administered a noxious substance to the victim and (2) the substance, in the manner used, was likely to produce death or great bodily harm. *See Smith*, 907 So. 2d at 198.

The Government responds that intent to cause bodily injury may be inferred from the use of a "dangerous weapon" as Louisiana defines the term. Because the instrumentality, "in the manner used," must be "calculated or

likely to produce death or great bodily harm," La. Rev. Stat. § 14:2(A)(3), proof of the offense of aggravated assault with a dangerous weapon necessarily entails proof of intent to cause bodily injury—the same intent that is required to commit generic aggravated assault. While this argument has intuitive appeal, we ultimately find it unavailing. As *Smith* illustrates, mere evidence that a substance is noxious, coupled with actual injury resulting from the substance, suffices to prove under Louisiana law that an aggravated assault was committed with a dangerous weapon; no showing is required that the defendant specifically *intended to cause* that result. *See* 907 So. 2d at 198. Moreover, contrary to the Government's position, the definition of "deadly weapon" in the Model Penal Code is not functionally equivalent to its counterpart in the Louisiana statute. First, the Model Penal Code requires that the instrumentality be "*known* to be capable of producing death or serious bodily injury," Model Penal Code § 210.0(4) (emphasis added), rather than only "calculated or likely" to do so, La. Rev. Stat. § 14:2(A)(3). Second, because the Model Penal Code prescribes a culpable mental state of "purposely" or "knowingly" to the underlying offense, these heightened levels of intent apply to every element of the offense—including the use of a deadly weapon, *see* Model Penal Code §§ 2.02(4), 211.1(2)(b).

Acknowledging that the statutes "are not identical," the Government next asserts that the variations are so "minor" that they do not "remove the Louisiana statute from the generic, contemporary meaning of aggravated assault." The strongest authority for the Government on this point seems to be *United States v. Sanchez–Ruedas*, 452 F.3d 409 (5th Cir. 2006). In that case, we found that a conviction for assault with a deadly weapon under California Penal Code § 245(a)(1) constituted a conviction for generic aggravated assault, notwithstanding several discrepancies between the

No. 14-40321

California statute and the Model Penal Code. *Id.* at 413–14. As relevant here, we concluded that the "subtle difference between the aggravating factors in these two statutes, California's focus on the defendant's intentional *conduct* in contrast to the Model Penal Code's focus on the defendant's intentional *result*, is not enough to remove the California statute from the family of offenses commonly known as 'aggravated assault.'" *Id.* at 414. Although this language suggests that a distinction between conduct and result with regard to criminal intent is a "minor variation" that does not foreclose a finding of equivalency, *Herrera*, 647 F.3d at 176, there is no indication that the California statute at issue in *Sanchez–Ruedas* has been interpreted as broadly as the Louisiana statute here.[7] Indeed, *Smith* demonstrates that conduct not necessarily amounting to generic aggravated assault may be

---

[7] Further, we note that the California and Louisiana statutes proscribe meaningfully different conduct. The California statute criminalizes "assault upon the person of another with a deadly weapon or instrument other than a firearm," Cal. Penal Code § 245, and requires a showing of attempted "'violent injury' (which California defines as 'the least touching') committed by any means of force likely to produce great bodily injury," *United States v. Sanchez–Ruedas*, 452 F.3d 409, 414 (5th Cir. 2006). According to the California Supreme Court decision that we relied on in *Sanchez–Ruedas*, for conduct to violate the California assault statute, the state must show "that the defendant willfully or purposely attempted . . . any wrongful act committed by means of *physical force* against the person of another." *People v. Colantuono*, 865 P.2d 704, 709 (Cal. 1994) (emphasis added) (internal quotation marks omitted). Because the attempted act proscribed by the California statute is physical force, the difference in the mens rea requirement between the California assault statute (intent to perpetrate physical force) and the Model Penal Code (intent to cause bodily injury) plausibly can be characterized as a minor variation—the intent to injure can be inferred from the intent to use physical force against another with a deadly weapon.

By contrast, the least culpable act constituting a violation of Louisiana's aggravated battery statute is the non-violent administration of a noxious substance which, in the manner used, is likely to produce great bodily harm. Unlike the obvious consequences of, say, swinging a knife at another person, administering a noxious substance may have chemical effects that are likely to produce harm to the victim but are not predicted or understood by the perpetrator. Accordingly, the difference between Louisiana's general intent requirement and the Model Penal Code's specific intent requirement is not "subtle." *Cf. Sanchez–Ruedas*, 452 F.3d at 414. Rather, committing the criminal act is further removed from its potential consequences, and there is a non-negligible possibility—as illustrated by *Smith*—that an individual who intends only to commit the act and not to cause grievous injury will be convicted under the Louisiana statute.

successfully prosecuted under § 14:34. This defeats not only the Government's "minor variation" argument, but also its challenge to Hernandez–Rodriguez to raise a "realistic probability . . . that [Louisiana] would apply its statute to conduct that falls outside the generic definition of [aggravated assault]," *Duenas–Alvarez*, 549 U.S. at 193.

Because the least culpable means of violating the Louisiana aggravated battery statute falls outside of the generic definition of aggravated assault, the statute "encompasses prohibited behavior that is not within the plain, ordinary meaning of the enumerated offense," and Hernandez–Rodriguez's conviction "is not a crime of violence as a matter of law." *See Esparza–Perez*, 681 F.3d at 230.[8]

## IV. CONCLUSION

For the foregoing reasons, we VACATE Hernandez–Rodriguez's sentence and REMAND to the district court for resentencing.

---

[8] Without the erroneous sixteen-level enhancement, Hernandez–Rodriguez would have been subject to, at most, an eight-level "aggravated felony" enhancement under U.S.S.G. § 2L1.2(b)(1)(C). Leaving all other Guidelines factors undisturbed, Hernandez–Rodriguez would have received a Guidelines range of fifteen to twenty-one months—twenty to twenty-six months lower than the sentence originally imposed by the district court. The Government makes no effort to discharge its burden to show that this error was harmless, and we see no indication in the record that the district court would have imposed the same sentence but for the erroneous enhancement. *See, e.g.*, *United States v. Groce*, 784 F.3d 291, 296 (5th Cir. 2015). We express no view on whether Hernandez–Rodriguez's conviction qualifies for the § 2L1.2(b)(1)(C) aggravated felony enhancement and instead leave this determination to the district court in the first instance. *See United States v. Calderon–Pena*, 383 F.3d 254, 262 (5th Cir. 2004) (en banc) (per curiam).