# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40208

United States Court of Appeals
Fifth Circuit

**FILED**

April 21, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

GUADALUPE TORRES-JAIME,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before CLEMENT, GRAVES, and COSTA, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Guadalupe Torres-Jaime ("Torres-Jaime") challenges the district court's sixteen-level "crime of violence" sentencing enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) based on his prior Georgia aggravated assault conviction. Torres-Jaime urges us to find—in direct contrast to Fifth Circuit decisions holding otherwise—that his conviction under Georgia Code § 16-5-21(a)(2)[1] does not constitute a § 2L1.2 enumerated crime of violence. We **AFFIRM** the judgment of the district court.

---

[1] This subsection is now numbered § 16-5-21(b)(2). *See* GA. CODE § 16-5-21 (2015). This opinion continues to refer to § 16-5-21(a)(2), the designation of the statute as it existed at the time of Torres-Jaime's conviction.

No. 15-40208

## I.

In October 2014, Guadalupe Torres-Jaime pleaded guilty, without the benefit of a written plea agreement, to a single count of illegal re-entry after deportation. The Presentence Investigation Report determined Torres-Jaime's total offense level to be twenty-one, which included a sixteen-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) because Torres-Jaime's 2014 Georgia felony conviction for aggravated assault qualified as a "crime of violence" within § 2L1.2. His total offense level of twenty-one, when combined with his criminal history category of III, yielded a recommended guidelines range of forty-six to fifty-seven months' imprisonment.

Torres-Jaime objected to the sixteen-level enhancement, arguing that his prior Georgia aggravated assault offense was not a crime of violence under the Guidelines. The district court overruled Torres-Jaime's objection, downwardly departed, and sentenced him to thirty-two months' imprisonment. Torres-Jaime timely appealed.

## II.

We consider this single issue: whether Torres-Jaime's aggravated assault conviction under Georgia Code § 16-5-21(a)(2) constitutes an enumerated crime of violence pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii). We review the district court's interpretation or application of the Guidelines de novo and its factual findings for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

Section 2L1.2 of the Sentencing Guidelines provides that the offense level for unlawfully entering or remaining in the United States shall be increased by sixteen levels if the defendant has a prior conviction for a crime of violence. *See* § 2L1.2(b)(1)(A)(ii). The commentary to § 2L1.2 defines "crime of violence" as (1) any specific enumerated offense, including "aggravated assault" or (2) "any other offense under federal, state, or local law that has as

2

an element the use, attempted use, or threatened use of physical force against the person of another." § 2L1.2, comment. (n.1(B)(iii)).

We use different tests "when analyzing whether a particular offense amounts to a [crime of violence], and the test used depends on whether the offense is an enumerated one or has physical force as an element." *United States v. Moreno-Florean*, 542 F.3d 445, 449 (5th Cir. 2008). Because the state crime at issue is the enumerated offense of "aggravated assault," we apply a "common sense" approach that looks to the "generic, contemporary meaning" of an offense listed in § 2L1.2 to assess whether the offense of conviction amounts to an enumerated offense. *United States v. Esparza-Perez*, 681 F.3d 228, 229 (5th Cir. 2012). To determine this "plain, ordinary meaning," we look to various sources including the Model Penal Code, Professor LaFave's *Substantive Criminal Law* treatise, modern state statutes, and legal dictionaries. *United States v. Mungia-Portillo*, 484 F.3d 813, 816 (5th Cir. 2007); *see Esparza-Perez*, 681 F.3d at 229. "When comparing the state conviction with the generic, contemporary meaning of the crime, we examine the elements of the statute of conviction rather than the specifics of the defendant's conduct. We look only to the particular subdivision of the statute under which the defendant was convicted." *United States v. Fierro-Reyna*, 466 F.3d 324, 327 (5th Cir. 2006) (citation omitted).

If the defendant was convicted under a statute that is "narrower than the generic crime" or that mirrors the generic definition with only "minor variations," the enhancement may stand. *United States v. Herrera*, 647 F.3d 172, 176 (5th Cir. 2011). But if the statute of conviction "encompasses prohibited behavior that is not within the plain, ordinary meaning of the enumerated offense, the conviction is not a crime of violence as a matter of law." *Esparza-Perez*, 681 F.3d at 230 (internal quotation marks omitted).

No. 15-40208

Moreover, under the common sense approach, "if the statute of conviction contains a series of disjunctive elements, this court may look beyond the statute to certain records made or used in adjudicating guilt to determine which subpart of the statute formed the basis of the conviction." *Moreno-Florean*, 542 F.3d at 449; *see Mungia-Portillo*, 484 F.3d at 815. Qualifying records "are 'generally limited to . . . the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.'" *United States v. Herrera-Alvarez*, 753 F.3d 132, 138 (5th Cir. 2014) (quoting *Shepard v. United States*, 544 U.S. 13, 16 (2005)). If such *Shepard*-compliant documents cannot narrow the conviction, we determine whether the "least culpable act constituting a violation of that statute" necessarily entails the use of force or constitutes the enumerated offense. *United States v. Gonzalez-Ramirez*, 477 F.3d 310, 315–16 (5th Cir. 2007).

The State's indictment charged Torres-Jaime with violating Georgia Code § 16-5-21. Under Georgia law, a person commits an aggravated assault when he assaults:

> (1) With intent to murder, to rape, or to rob;
>
> (2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; or
>
> (3) A person or persons without legal justification by discharging a firearm from within a motor vehicle toward a person or persons.

GA. CODE § 16-5-21(a) (2013). In order to commit an aggravated assault under Georgia law, a person must also commit the offense of simple assault. *Guyse v. State*, 690 S.E.2d 406, 409 (Ga. 2010). A person commits a simple assault when he either "(1) [a]ttempts to commit a violent injury to the person of another; or (2) [c]ommits an act which places another in reasonable

4

apprehension of immediately receiving a violent injury." GA. CODE § 16-5-20(a) (2015).

Here, the indictment charges a violation of § 16-5-21, but does not specify the particular simple assault subsection, § 16-5-20(a)(1) or § 16-5-20(a)(2), under which Torres-Jaime was convicted. Torres-Jaime asserts that the court must analyze it as an aggravated assault under subpart (a)(2) of Georgia's simple assault statue because this is the "least culpable act constituting a violation of the statute." *See Gonzalez-Ramirez*, 477 F.3d at 315–16. The Government maintains, however, that Torres-Jaime's indictment reflects the subsection language of § 16-5-20(a)(1), attempting to "commit a violent injury."

In exploring this critical determination, we look to Torres-Jaime's *Shepard*-approved charging document. *See Shepard*, 544 U.S. at 25; *United States v. Rodriguez*, 711 F.3d 541, 549 n.8 (5th Cir. 2013). The State of Georgia indictment charged Torres-Jaime with aggravated assault and alleged that:

> On August 8, 2013, Torres-Jaime "did unlawfully make an assault upon the person of Marten Tzun, driver[,] and Leidi Latin-Garcia, passenger[,] with his 2000 Chevrolet Express Van, an instrument which when used offensively against a person is likely to result in serious bodily injury by repeatedly ramming into Marten Tzun's 2006 Nissan Pathfinder with said Chevrolet Express Van . . . ."

The judgment indicates that Torres-Jaime pleaded guilty to "[a]ggravated assault" and was given an eight-year felony sentence, which was probated.

Our analysis leads us, first, to conclude that the description of Torres-Jaime's conduct, as quoted above, unquestionably tracks the aggravated assault language of § 16-5-21(a)(2). Accordingly, we look only to subsection (a)(2) to determine whether the statute of conviction should be classified as a crime of violence. *See Esparza-Perez*, 681 F.3d at 231. Additionally, the language of Torres-Jaime's indictment expressed above more closely tracks the language for simple assault under § 16-5-20(a)(1). To reiterate, Torres-Jaime

was charged with "mak[ing] an assault upon the [victims] . . . with his 2000 Chevrolet Express Van" that was "likely to result in serious bodily injury." It is true that this qualifying record does not expressly specify the statutory subsection; but, it does demonstrate the manner in which Torres-Jaime acted, by repeatedly ramming his vehicle into that of his victims, and suggests what his *mens rea* may have been. Thus, it appears that his aggravated assault charge falls under subpart (1) of the statute, i.e., that Torres-Jaime "attempted to commit a violent injury to the person of another," rather than subpart (2), which requires the commission of "an act which places another in reasonable apprehension of immediately receiving a violent injury."

Having narrowed Torres-Jaime's conviction, we return to the question of whether Torres-Jaime's aggravated assault conviction constitutes a crime of violence for purposes of § 2L1.2(b)(1)(a)(ii). Notably, Torres-Jaime does not challenge any determination that a conviction for aggravated assault with a deadly weapon under § 16-5-21(a)(2), where the predicate assault is committed under § 16-5-20(a)(1), constitutes a crime of violence for purposes of § 2L1.2(b)(1)(a)(ii). Instead, his argument on appeal is grounded in subpart (2) of the Georgia assault statute (as incorporated into the aggravated assault statute), which, he contends, proscribes conduct outside the common, contemporary definition of "aggravated assault." More specifically, he asserts that, under § 16-5-20(a)(2), unlike the Model Penal Code's definition of aggravated assault, the Georgia offense of aggravated assault with a deadly weapon does not require an intent to injure. Torres-Jaime argues that the Georgia offense does not constitute generic aggravated assault because it does not require proof that the defendant intentionally or knowingly caused or attempted to cause bodily injury. *See Dunagan v. State,* 502 S.E.2d 726, 730 (Ga. 1998)*, overruled on other grounds by Parker v. State,* 507 S.E.2d 744 (Ga. 1998) (holding that to prove the use of a deadly or offensive weapon that put

6

the victim in a reasonable apprehension of immediately receiving a violent injury, the State must prove the intent to commit the act of using a deadly or offensive weapon, not an intent to make the victim apprehensive).

We do not agree, especially having already determined that the conduct described in Torres-Jaime's indictment places his conviction squarely under § 16-5-20(a)(1). Thus, we need not consider Torres-Jaime's arguments, requiring that we shift our focus to the "least culpable" means of committing aggravated assault under Georgia law. But, even if we did consider them, his arguments are still unavailing.

We have identified the Model Penal Code as our "primary source for the ordinary meaning" of aggravated assault. *United States v. Hernandez-Rodriguez*, 788 F.3d 193, 197 (5th Cir. 2015). The Model Penal Code defines "aggravated assault" as occurring when a person "'attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life'" or "'attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.'" *Id.* (quoting MODEL PENAL CODE § 211.1(2)(a), (b)). "Deadly weapon" is defined by the Model Penal Code as "any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury." MODEL PENAL CODE § 210.0(4). "Looking also to other approved sources, we have noted that '[t]he generic, contemporary meaning of aggravated assault is an assault carried out under certain aggravating circumstances,' and that '[a]ssault, in turn, requires proof that the defendant either caused, attempted to cause, or threatened to cause bodily injury or offensive contact to another person.'" *Hernandez-Rodriguez*, 788 F.3d at 197 (quoting *Esparza-Perez*, 681 F.3d at 231

7

(citing, *inter alia*, *Black's Law Dictionary* 130 (9th ed. 2009); Wayne R. LaFave, 2 *Substantive Criminal Law* § 16.3 (2d ed. 2014))).

We have held in a series of unpublished decisions that the Georgia offense of aggravated assault is a crime of violence under § 2L1.2. *See United States v. Soto-Romero*, 491 F. App'x 481, 482 (5th Cir. 2012); *United States v. Gonzalez-Flores*, 228 F. App'x 491, 491–92 (5th Cir. 2007); *see also United States v. Hyrtado*, 551 F. App'x 161, 162 (5th Cir. 2014) (analyzing whether the Georgia offense of aggravated assault was a crime of violence under U.S.S.G. § 2K2.1). Unpublished opinions, although not precedential, may be considered persuasive authority. *See Ballard v. Burton*, 444 F.3d 391, 401 & 401 n.7 (5th Cir. 2006). We are persuaded that each decision, upon comparison of the Georgia crime and the generic crime under the common sense approach, confirms that Torres Jaime's conviction qualifies as a crime of violence under § 2L1.2.

In *Gonzalez-Flores*, the defendant argued that his Georgia aggravated assault conviction did not constitute a crime of violence under § 2L1.2(b)(1)(A)(ii). 228 F. App'x at 491. We used a "common sense approach," and "h[e]ld that the generic, contemporary meaning of the offense of aggravated assault includes the intentionally-caused apprehension of injury, 2 W.R. LaFave & A. Scott, *Substantive Criminal Law*, § 16.3 (2d ed. 2005), and that Gonzalez's Georgia offense f[ell] within that generic, contemporary meaning." *Id.* (citing *United States v. Santiesteban-Hernandez*, 469 F.3d 376, 378–79 (5th Cir. 2006), *abrogated on other grounds by Rodriguez,* 711 F.3d at 554–55; *United States v. Sanchez-Ruedas*, 452 F.3d 409, 411, 414 (5th Cir. 2006)).

In *Soto-Romero*, the defendant argued that his Georgia aggravated assault conviction was not a crime of violence under § 2L1.2(b)(1)(A)(ii) because it was not an enumerated offense and it did not implicate § 2L1.2's "use of

force" prong. 491 F. App'x at 482. Under plain error review, we again held that "[u]sing a 'common sense approach,' . . . the generic, contemporary meaning of the offense of aggravated assault includes the intentionally-caused apprehension of injury," and concluded "that Soto-Romero's Georgia offense f[ell] within that generic, contemporary meaning." *Id.* (citing *Santiesteban-Hernandez*, 469 F.3d at 378–79; *Sanchez-Ruedas*, 452 F.3d at 411, 414).[2]

In *Hyrtado*, the defendant argued that his Georgia aggravated assault convictions were not crimes of violence under U.S.S.G. § 2K2.1. 551 F. App'x at 161. For an offense to qualify as a crime of violence under § 2K2.1, it must either "(1) contain as a statutory element the use, attempted use, or threatened use of physical force against the person of another; (2) belong to the list of enumerated offenses; (3) or fall under the residual clause of [U.S.S.G.] § 4B1.2(a)(2) by presenting a serious risk of physical injury to another." *See Hyrtado*, 551 F. App'x at 162 (internal quotations marks omitted). The list of enumerated offenses includes "aggravated assault." U.S.S.G. § 4B1.2, comment. (n.1.).

Reviewing the issue under the plain error standard of review, we stated that we had "not previously addressed whether the statute of conviction, Ga. Code § 16-5-21(a)(2), [wa]s a [crime of violence]." *Hyrtado*, 551 F. App'x at 162. After reviewing the statute, we concluded that any differences between the statute and the "generic, contemporary definition of 'aggravated assault'" were "immaterial" and therefore Hyrtado's convictions were crimes of violence because they belonged to the list of enumerated offenses. *Id.* (citing *Esparza-Perez*, 681 F.3d at 231–32; *United States v. Rojas-Gutierrez*, 510 F.3d 545, 549

---

[2] Notably, the charging language of Torres-Jaime's indictment parallels the charging language in *Soto-Romero*, which stated that the defendant "did unlawfully make an assault upon the [victim] . . . with an object, device and instrument, to wit: a beer bottle, which when used offensively against a person is likely to and actually did result in serious bodily injury." There, we held, as we hold here, that the Georgia offense of aggravated assault is a crime of violence under § 2L1.2.

n.5 (5th Cir. 2007)). We alternatively concluded that the convictions were crimes of violence under the residual clause of § 4B1.2, comment. (n.1). *Id.*

Torres-Jaime urges that we disregard the foregoing unpublished opinions because the issue was reviewed for plain error in *Soto-Romero* and *Hyrtado*, because none of the decisions indicate whether the court addressed the issues raised in the instant appeal, and because none of the opinions provide analysis for the conclusions reached. That is not the case.

Delving just below the opinions' surfaces (i.e., considering the Fifth Circuit precedent and sources cited therein), the reasoning for those decisions can be extrapolated from their citations to Professor LaFave's treatise, *Santiesteban-Hernandez*, and *Sanchez-Ruedas. See Soto-Romero*, 491 F. App'x at 482; *Gonzalez-Flores*, 228 F. App'x at 491. In *Santiesteban-Hernandez,* we stated that the sources of generic, contemporary meaning for the enumerated offenses include treatises. 469 F.3d at 379. According to 2 W.R. LaFave & A. Scott, *Substantive Criminal Law*, § 16.3 (2d ed. 2015),

> [t]he principal question concerning the crime of assault [is] whether it is to be limited to the situation of the attempted battery (requiring an actual intent to cause a physical injury, not just an apprehension of such an injury); or whether it should include, in addition, the civil-assault situation of the intentionally-caused apprehension of injury.

The treatise further provides that "[t]he weight of authority, fortified by the modern trend, is to include the latter situation as well as the former in the scope of the crime of assault."  2 W.R. LaFave & A. Scott, *Substantive Criminal Law*, § 16.3 (2d ed. 2015). Consequently, we concluded in *Gonzalez-Flores* and *Soto-Romero* that the generic, contemporary meaning of aggravated assault included the intentionally caused apprehension of injury. *See Soto-Romero*, 491 F. App'x at 482; *Gonzalez-Flores*, 228 F. App'x at 491.

No. 15-40208

Our analyses in those prior decisions also rested, in part, on *Sanchez-Ruedas*. *See Soto-Romero*, 491 F. App'x at 482; *Gonzalez-Flores*, 228 F. App'x at 491. In *Sanchez-Ruedas*, we held that the "subtle difference" between the Model Penal Code's *mens rea* attaching to the "serious bodily injury requirement" and the California statute's focus on the defendant's intentional conduct, and not the ultimate result, was insufficient to remove the California statute from the commonly defined term "aggravated assault."[3] 452 F.3d at 414. We explained that the California statute at issue proscribed "'willfully or purposefully' attempting 'violent injury' (which California defines as 'the least touching') committed by any means of force likely to produce great bodily injury." *Id.* (quoting *People v. Colantuono,* 865 P.2d 704, 709 (Cal. 1994)). "Thus, in California, the defendant need not specifically intend great bodily injury, but need only intentionally engage in *conduct* that will likely produce that." *Sanchez-Ruedas*, 452 F.3d at 414 (citing *Colantuono,* 865 P.2d at 709 (providing that although, under the California assault statute, the defendant "must intentionally engage in conduct that will likely produce injurious consequences, the prosecution need not prove a specific intent to inflict a particular harm")). Thus, in *Gonzalez-Flores* and *Soto-Romero* we concluded that the Georgia statute's focus on the defendant's intentional conduct as opposed to his intended result would not preclude the offense of conviction from falling within the contemporary, ordinary meaning of aggravated assault. *See Soto-Romero*, 491 F. App'x at 482; *Gonzalez-Flores*, 228 F. App'x at 491.

---

[3] The California statute read: "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment." *See Sanchez-Ruedas*, 452 F.3d at 413 (footnote omitted). "Assault" was defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." *See id.* at 413 n.4.

No. 15-40208

Torres-Jaime, however, points to our recent published opinion in *Hernandez-Rodriguez*, 788 F.3d 193 (5th Cir. 2015), as intervening authority and urges us to find that case instructive here. We do not.

In *Hernandez-Rodriguez*, the defendant challenged a sixteen-level § 2L1.2(b)(1)(A)(ii) enhancement to his offense level based upon his prior Louisiana conviction for aggravated battery, which could be committed by, *inter alia*, intentionally administering poison. 788 F.3d at 194, 196. The defendant argued that the Louisiana statute was broader than the generic, contemporary definition of aggravated assault because the Louisiana offense was one of general intent, while the generic offense of aggravated assault required a showing of specific intent. Because the criminal intent under Louisiana law attached to the defendant's conduct (i.e., the intentional use of force or administration of poison) rather than to the result of that conduct (i.e., causing bodily injury), and the opposite was true of the generic offense, he argued that his conviction did not qualify as a crime of violence. *Id.* at 197.

Upon review, we concluded that the least culpable means of committing aggravated battery under Louisiana law, which involved the administration of poison, involved conduct beyond the scope of the generic, contemporary meaning of aggravated assault. *Id.* at 198. We determined that the Louisiana offense did not require the infliction of serious bodily injury or the intent to inflict serious injury while the Model Penal Code "require[d] specific intent to cause bodily injury." *Id.* Moreover, with respect to the deadly weapon alternative, the defendant, under the Model Penal Code, had to either "attempt to cause" or "purposely or knowingly cause" bodily injury. *Id.*

In so holding, we rejected the government's argument that the intent to cause bodily injury could be inferred from the use of a dangerous weapon that, in the manner used, was likely to produce death or bodily harm because Louisiana law did not require that the defendant specifically intend the result.

*Id.* at 199. We also rejected the government's argument that the differences between the Louisiana statute and the Model Penal Code were minor such that the Louisiana statute still fell within the generic, contemporary meaning of aggravated assault. *Id.* at 199–200. We acknowledged that, in *Sanchez-Ruedas*, we concluded that the difference between the California statute's focus on intentional conduct and the Model Penal Code's focus on the intentional result did not remove the California statute from the generic, contemporary meaning of aggravated assault. *Id.* But, we distinguished the Louisiana aggravated battery statute at issue in *Hernandez-Rodriguez* from the California offense of assault with a deadly weapon at issue in *Sanchez-Ruedas* by noting that the California statute had not been interpreted as broadly as the Louisiana statute. *Id.* at 200.

Several distinctions between *Hernandez-Rodriguez* and the present case result in its inapplicability here. First, Torres-Jaime provides no evidence that the Georgia statute is interpreted and applied as broadly as the Louisiana statute that we examined in *Hernandez-Rodriguez*—i.e., such that the Georgia statute would apply to the "administration of a noxious substance" committed without intended physical force. We find such an application unlikely because even considering the Georgia statute most broadly, it allows only for the "act of using an instrument offensively." Thus, there is no reason to believe that the "non-violent administration of poison" would qualify as the offensive use of an instrument under Georgia's statute (the statutory language of § 16-5-21(b)(2), which reads "[w]ith a deadly weapon or with any object, device, or instrument"). Rather than controlling the present case, *Hernandez-Rodriguez* is more analogous to our holding in *Esparza-Perez*, which determined that there were material differences between the Model Penal Code and Arkansas's aggravated assault statute—which made it a crime to purposely engage in conduct that creates a substantial danger, under circumstances that

"manifest[] extreme indifference to the value of human life." *See Esparza-Perez*, 681 F.3d at 232. Here, the statute when read in combination with the dangerous weapon requirement establishes sufficiently similar criminal intent to satisfy the common sense test; any differences between the statutes amount to minor variations that do not preclude a finding of equivalence.

Accordingly, we hold that Torres-Jaime's conviction for Georgia aggravated assault qualifies as a crime of violence under § 2L1.2.

## III.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

No. 15-40208

GREGG COSTA, Circuit Judge, dissenting:

The strong interest in uniform application of the law means that we should usually follow unpublished decisions. But the difference between published and unpublished decisions must mean something. Otherwise, we should just "publish" everything and give all opinions the weight of binding authority.[1]

This case does not require fleshing out the full contours of when the desire for consistency that should ordinarily lead us to follow unpublished decisions should give way to the interest in getting the law right. For it involves a situation in which a departure from nonprecedential authority should not be controversial: when a key legal premise of those unpublished decisions is revealed to be demonstrably false. That is the case here with respect to our prior, unpublished rulings which incorrectly assumed that the Georgia assault statute requires intentionally causing apprehension of violent injury.

But before addressing Georgia's "placing another in reasonable apprehension" assault statute, I first respond to the majority opinion's initial holding that such an inquiry is unnecessary because the indictment narrows Torres-Jamie's offense to the separate "attempts to commit a violent injury to the person of another" assault provision. GA. CODE § 16-5-20(a)(1) (2013); Maj. Op. at 5–7). The indictment does narrow the "aggravated" portion of the state offense by "unquestionably track[ing]" (Maj. Op. at 5) the statutory language of committing an assault with an "instrument which, when used offensively

---

[1] There is something to be said for this. *See generally Anastasoff v. United States*, 223 F.3d 898, 899 (8th Cir. 2000), *opinion vacated on reh'g en banc*, 235 F.3d 1054 (8th Cir. 2000). But our practice, for better or worse, is to have unpublished decisions that are only persuasive and published decisions that are binding.

against a person, is likely to or actually does result in serious bodily injury." GA. CODE § 16-5-21(b)(2) (2013). The indictment does not, however, invoke the language of either alternative in the underlying assault statute: "(1) [a]ttempts to commit a violent injury to the person of another; or (2) [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." GA. CODE § 16-5-20(a) (2013). The majority opinion nevertheless finds that the indictment narrows the conviction to the former because it "more closely tracks" that language, "suggests what his *mens rea* may have been," and thus "appears" to involve the attempt to commit a violent injury to another. Maj. Op. at 5–6. No authority is cited for this inference-based approach to the modified categorical inquiry. Such speculation should not be part of that inquiry, which focuses on whether formal documents from the state court case help narrow a conviction to the elements the court or jury was "actually required" to find. *Taylor v. United States*, 495 U.S. 575, 602 (1990). And inferring which Georgia assault provision was more likely at issue in Torres-Jamie's case from the facts—as opposed to elements—recited in the indictment is what the Supreme Court recently warned against: turning an "elements-based inquiry into an evidence-based one . . . makes examination of extra-statutory documents not a tool used in a 'narrow range of cases' to identify the relevant element from a statute with multiple alternatives, but rather a device employed in every case to evaluate the facts that the judge or jury found." *Descamps v. United States*, 133 S. Ct. 2276, 2287 (2013).

Although its determination that the conviction fell under the intent to injure provision would be sufficient to reject the appeal, the majority opinion nonetheless proceeds to spend the bulk of the opinion addressing the possibility that is not foreclosed by the indictment language: that the state conviction involved the "reasonable apprehension" assault provision. This brings us to its

reliance on the unpublished decisions mentioned at the outset.  The central reasoning of the two decisions that actually included any analysis[2] is that "the generic, contemporary meaning of the offense of aggravated assault includes the intentionally-caused apprehension of injury."  *United States v. Gonzalez-Flores*, 228 F. App'x 491, 491 (5th Cir. 2007); *United States v. Soto-Romero*, 491 F. App'x 481, 482 (5th Cir. 2012) (using nearly identical language).  But Georgia does not require that the apprehension be intentionally caused.  The Supreme Court of Georgia has held that "[t]he crime of aggravated assault . . . is established by the reasonable apprehension of harm by the victim of an assault by a firearm rather than the assailant's intent to injure.  All that is required is that the assailant intend to commit the act which in fact places another in reasonable apprehension of injury, not a specific intent to cause such apprehension."  *Smith v. State*, 629 S.E.2d 816, 818 (Ga. 2006); *see also, Adams v. State,* 667 S.E.2d 186, 190 (Ga. Ct. App. 2008) ("In an aggravated assault case involving the use of a deadly weapon, all that is required is that the assailant intend to commit the act which in fact places another in reasonable apprehension of injury, and not a specific intent to cause such apprehension.") (internal quotations omitted); *Wroge v. State*, 629 S.E.2d 596, 598 (Ga. Ct. App. 2006) (similar).

This difference is significant because the treatise cited by the majority opinion and the prior unpublished opinions specifies that "Assault as Intentional Scaring" requires intent to cause apprehension:

---

[2] *United States v. Hyrtado*, in which we reviewed for plain error a crime of violence sentencing enhancement applied under a different sentencing provision, does not mention anything about the causing apprehension provision of the Georgia statute.  Nor does it provide any other explanation for why Georgia's statute fell within the generic definition. 551 F. App'x 161, 162 (5th Cir. 2014).

It is sometimes stated that this type of assault is committed by an act . . . which reasonably causes another to fear bodily injury. This statement is not quite accurate, however, for one cannot (in those jurisdictions which have extended the tort concept of assault to criminal assault) commit a criminal assault by negligently or even recklessly or illegally acting in such a way (as with a gun or car) as to cause another person to become apprehensive of being struck. *There must be an actual intention to cause apprehension . . .*

W.R. LAFAVE & A. SCOTT, SUBSTANTIVE CRIMINAL LAW, § 16.3(b) (2d ed. 2005) (emphasis added). Georgia's assault statute, which prohibits even negligently causing apprehension of imminent violent injury, is thus an outlier. Given that even statutes covering the intentional causing of apprehension lie, at best, on the outer edges of the contemporary meaning of aggravated assault,[3] removing this intent requirement is more than a subtle difference from the generic crime.

And finding that a difference in requisite intent puts Georgia's statute outside the common definition of assault fits with our recent published decision in *United States v. Hernandez-Rodriguez*, 788 F.3d 193 (5th Cir. 2015), which held that Louisiana's lack of a specific intent to cause injury requirement makes that offense broader than generic aggravated assault. The majority opinion is correct that there is no evidence that Georgia's statute covers administration of a noxious substance without physical force. Maj. Op. at 13.

---

[3] *See* MODEL PENAL CODE § 211.1(2) (causing apprehension of imminent injury not a part of the definition of aggravated assault); *compare* LAFAVE, *supra*, at § 16.3 *with id.* at § 16.3(d) (describing a "modern trend" of including intentionally causing apprehension within criminal assault, but not noting such a trend for aggravated criminal assault)

But that isn't the question. The question is whether, as a practical rather than theoretical matter, the elements of the statute of conviction encompass conduct that is not within the ordinary meaning of the generic offense. *United States v. Esparza-Perez*, 681 F.3d 228, 230 (5th Cir. 2012). The numerous Georgia decisions, including one from its highest court, demonstrate the Georgia offense is broader because it covers conduct in which the defendant did not intend to cause apprehension of harm even though that fear resulted. And this lack of an intentionality requirement has real world effect, including in a case like this one in which an automobile was the weapon. *See, e.g., Kirkland v. State*, 638 S.E.2d 784, 785–87 (Ga. Ct. App. 2006) (upholding aggravated assault conviction based on victim's apprehension of injury from a defendant trying to flee in his car, with no evidence of intent to injure or cause apprehension). As for the California statute that we found qualified as aggravated assault despite a "subtle difference" between it and the standard *mens rea*, *United States v. Sanchez-Ruedas*, 452 F.3d 409, 414 (5th Cir. 2006), two features of that assault with a deadly weapon statute still place it far closer to the core of aggravated assault than the Georgia statue at issue here: it requires a *forcible* act,[4] and that force must be likely to produce great bodily injury, not merely apprehension of harm.[5]  *Id.*

When Torres-Jamie argued at sentencing that his Georgia conviction does not warrant the 16-point "crime of violence" enhancement, the district

---

[4] *See Esparza-Perez,* 681 F.3d at 231–32 (holding that Arkansas's statute is not within the common definition of aggravated assault because it "does not require *any* contact or injury *or* attempt *or* threat of offensive contact or injury.") (emphasis in original). And Black's Law Dictionary includes threatened, attempted, or actual use of force or battery in all its definitions of assault, and notes that "[i]n popular language, [assault] has always connoted a physical attack." *Assault,* BLACK'S LAW DICTIONARY (10th ed. 2014).

[5] *See* MODEL PENAL CODE § 211.1(2) (including only conduct related to "bodily injury" in its two types of aggravated assault).

judge responded, "I think you may be right."  But she understandably felt that she should follow the three unpublished decisions of a higher court.  We should exercise our greater freedom to reconsider those decisions and reject them given the faulty premise on which they were based and their inconsistency with our published decision in `*Hernandez-Rodriguez.*  I would therefore vacate the sentence that was based on the 16-point enhancement.