**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**June 12, 2006**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-40804

_____

United States of America,

Plaintiff-Appellee,

versus

JULIO SANCHEZ-RUEDAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before GARWOOD, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

GARWOOD, Circuit Judge:

Julio Sanchez-Ruedas was convicted of illegally reentering the United States after having been deported, in violation of 8 U.S.C. § 1326.  He appeals his sentence, including the application of a sixteen-level crime-of-violence enhancement and the denial of a two-level acceptance-of-responsibility reduction, on the following grounds: (1) the district court erroneously concluded that his 1995 conviction under Cal. Penal Code § 245(a)(1) constitutes "aggravated assault," an enumerated "crime of violence" under

section 2L1.2 of the Sentencing Guidelines; (2) the district court erroneously determined that because he put the government to its burden of proof at trial, he failed to accept responsibility for his crime; and (3) the sentence-enhancement provisions in 8 U.S.C. § 1326(b) are unconstitutional.  We affirm.

**FACTS AND PROCEEDINGS BELOW**

On October 31, 2004, Sanchez-Ruedas (Sanchez) was arrested by boarder patrol agents on a levee of the Rio Grande near Brownsville, Texas.  Against advice of counsel, Sanchez refused to plead guilty to re-entry, insisting instead on a jury trial.  The judge warned him that by putting the government to its burden, he was forfeiting his reduction for acceptance of responsibility, cautioning,

> "Mr. Sanchez, you understand what your counsel, Mr. Casas, and the government's counsel have just explained to the court, that they've talked to you about the chance that if you are convicted of this—in a jury trial of this violation of our immigration laws, that you'll be looking at much more time than you will be if you plead guilty? You understand that?

Sanchez insisted on a jury trial, during which his defense counsel made several arguments for acquittal on the facts, suggesting, for example, that Sanchez might have just been out for jog.  Sanchez also testified on his own behalf, explaining that he had crossed the river only to see his five children, who were American citizens.  During cross-examination, Sanchez suddenly expressed surprise when he realized the nature of the charge against him,

2

stating that if he had known that he was accused merely of being present in the country, he would have pleaded guilty. The jury returned a guilty verdict.

The Presentence Investigation Report (PSR), applying the 2004 guidelines, assessed Sanchez a base-offense level of eight, and increased it by sixteen levels to a total of twenty four, pursuant to U.S.S.G. § 2L1.2(b)(1)(A), because Sanchez's 1995 California conviction for Assault with a Deadly Weapon[1] was a crime of violence.[2]  The PSR did not specify whether it classified Sanchez's prior conviction as a crime of violence based on one of the enumerated crimes, such as "aggravated assault," or based on the residual clause, "has as an element the use . . . of physical force."  Sanchez on April 8, 2005 filed two relevant objections to the PSR.  First, he objected to the sixteen-level crime-of-violence

---

[1]The charging document (information) on which this prior conviction was rendered (which Sanchez does not deny) alleges that "On or about January 11, 1995, in the County of Los Angeles, the crime of ASSAULT GREAT BODILY INJURY AND WITH DEADLY WEAPON, in violation of PENAL CODE SECTION 245(a)(1), a Felony, was committed by JULIO RUEDAZ SANCHEZ, who did willfully and unlawfully commit an assault upon TYLER REINOHL with a deadly weapon, to wit, knife, and by means of force likely to produce great bodily injury."

[2]For the purposes of section 2L1.2(b)(1), the term "crime of violence" is defined as "any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (2004).

3

enhancement, arguing that his prior conviction did not necessarily have as an element the intentional use of force. Later, at his sentencing hearing on May 17, 2005, Sanchez also addressed the enumerated crimes-of-violence section of the definition, arguing "[i]t was not an aggravated assault. . . . This was just regular assault." In his second objection to the PSR, Sanchez argued that he should receive a two-level reduction for acceptance of responsibility because although he put the government to its burden at trial, he did so only after admitting all elements of his offense. Finally, Sanchez objected at sentencing that the sentence-enhancement provisions of 8 U.S.C. § 1326(b) are unconstitutional, an objection that he concedes is foreclosed by *Almendarez-Torres*.[3] The district court overruled Sanchez's relevant objections and adopted the PSR without change.

**DISCUSSION**

I. The Crime of Violence Enhancement

Sanchez first appeals from his sixteen-level crime-of-violence enhancement, principally contending that his prior conviction did not necessarily have as an element the intentional use of force. Only in a conclusory fashion does Sanchez also contend that his prior conviction is not "aggravated assault," one of the enumerated crimes of violence listed in U.S.S.G. § 2L1.2, cmt. n.1(B)(iii). Because we agree with the government's contention that Sanchez's

---

[3]523 U.S. 224, 235 (1998).

4

1995 conviction for assault with a deadly weapon under California Penal Code § 245(a)(1) constitutes aggravated assault, we affirm the district court's sixteen-level enhancement.

Sanchez does not dispute the *fact* of his prior conviction, only its *legal* characterization as a crime of violence under U.S.S.G. § 2L1.2, a characterization that we review *de novo*. *United States v. Calderon-Pena*, 383 F.3d 254, 256 (5th Cir. 2004) (*en banc*). Because the guidelines do not define the enumerated crimes of violence, this court adopts a "common sense approach," defining each crime by its "generic, contemporary meaning." *United States v. Izaguirre-Flores,* 405 F.3d 270, 275 & n.16 (5th Cir. 2005); *United States v. Dominguez-Ochoa*, 386 F.3d 639, 642-43 (5th Cir.2004). *See also United States v. Murillo-Lopez*, 444 F.3d 337, 344 (5th Cir. 2006) ("Applying a common sense approach and the ordinary, contemporary and common meaning . . ."). For sources of generic contemporary meaning, we consider, *inter alia*, the Model Penal Code, Professors LaFave and Scott's treatise, modern state cases, and dictionaries. *Dominguez-Ochoa,* 386 F.3d at 643; *Izaguirre-Flores*, 405 F.3d at 275. *See also Taylor v. United States*, 110 S.Ct. 2143, 2149, 2158 (1990). Moreover, "[t]his court endorses a categorical approach to evaluating the correspondence between generic contemporary meaning and the statutory definition of the prior offense. We look to the elements of the prior offense of conviction, not to the defendant's prior conduct; to the

5

underlying law, not to the underlying facts." *United States v. Torres-Diaz*, 438 F.3d 529, 536 (5th Cir. 2006) (citation omitted).

In *Torres-Diaz*, this court held that the defendant's prior Connecticut conviction for second-degree assault constituted the enumerated offense of "aggravated assault" under U.S.S.G. § 2L1.2, cmt. n.1(B)(iii), the same section of the guidelines at issue in this appeal. For the generic, contemporary meaning, *Torres-Diaz* relied in large part upon the Model Penal Code's definition of aggravated assault, which provides:

> "Aggravated Assault. A person is guilty of aggravated assault if he:
> (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or
> (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon."

Model Penal Code § 211.1(2).

The California criminal statute under which Sanchez-Ruedas was convicted, Cal. Penal Code § 245(a)(1), at the time of his offense, provided:

> "Any person who commits an assault[4] upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a

---

[4]Cal. Penal Code § 240 (1995) ("An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.").

6

county jail not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment."

Cal. Penal Code § 245(a)(1)(1995).

This California Penal Code provision is sufficiently similar to the generic contemporary definition of aggravated assault to qualify categorically as an enumerated crime of violence. As an initial matter, we note that the Model Penal Code's definition of aggravated assault comprises both the traditional crime of assault (an inchoate battery) as well as the crime of battery itself. California, on the other hand, maintains the traditional distinction between the crimes of battery and assault, requiring physical contact for the former and not for the latter. *See People v. Colantuono*, 865 P.2d 704, 709 (Cal. 1994). This difference does not effect our result because the more narrow California statute is subsumed by the broader definition in the Model Penal Code, and, besides, on this point the California definition itself more closely resembles the "common sense" definition of aggravated assault. *See* 2 W. R. LaFave & A. Scott, Substantive Criminal Law, § 16.1 (2d ed. 2005) (noting that the Model Penal Code "defines assault to include both assault . . . and battery" while arguing that "it is more accurate to distinguish between the two separate crimes."); Black's Law Dictionary 105 (6th ed. 1991) ("Assault. Any willful *attempt or threat* to inflict injury . . . .") (emphasis added).

We turn next to the two remaining differences between the California statute and the Model Penal Code, both of which are easily resolved. First, we note that the California statute proscribes the use of a "deadly weapon or instrument," while the Model Penal Code proscribes the use only of a "deadly weapon." We need not parse and compare the definitions of these two terms, as both are typical of aggravating factors associated with aggravated assault. In the context of the crime of battery, for example, Professor LaFave explains, "Often the specified aggravating factor is . . . any weapon or, much more commonly, by what is variously called a 'deadly weapon,' 'dangerous weapon,' 'dangerous instrumentality,' or 'deadly weapon or dangerous instrumentality.'" 2 W. R. LaFave & A. Scott, Substantive Criminal Law, § 16.2(d) (2d ed. 2005).

Nevertheless, the two terms, "deadly weapon" and "deadly weapon or instrument," are in fact nearly identical in this context. The Model Penal Code defines "deadly weapon" as "any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury." Model Penal Code § 210.0(4). And, the Supreme Court of California has held that, "as used in section 245, subdivision (a)(1), a 'deadly weapon' is 'any object, instrument, or weapon which is used in such a manner as to be capable of

8

producing and likely to produce, death or great bodily injury." *People v. Aguilar*, 945 P.2d 1204, 1207 (Cal. 1997) (citation omitted). Furthermore, that same court has generally treated the phrase "deadly weapon or instrument" as a whole, rejecting, for example, the contention that the clause be read disjunctively. *Id.* at 1209-10.

The final difference between the California statute and the Model Penal Code is in their treatment of aggravated assault committed without a weapon. The Model Penal Code proscribes an attempt to cause serious bodily injury, and accordingly the *mens rea* attaches to the "serious bodily injury" requirement itself. The California statute, on the other hand, proscribes "willfully or purposefully" attempting "violent injury" (which California defines as "the least touching") committed by any means of force likely to produce great bodily injury. *Colantuono*, 865 P.2d at 709. Thus, in California, the defendant need not specifically intend great bodily injury, but need only intentionally engage in *conduct* that will likely produce that. *Id.* "The gravamen of the crime defined by . . . section 245 is the likelihood that the force applied or attempted to be applied will result in great bodily injury." *Id.* at 711 (internal quotation marks and emphasis omitted).

This subtle difference between the aggravating factors in these two statutes, California's focus on the defendant's intentional *conduct* in contrast to the Model Penal Code's focus on

9

the defendant's intentional *result*, is not enough to remove the California statute from the family of offenses commonly known as "aggravated assault."

Finally, although it is not alone of determinative significance, we note that the California courts refer to section 245 as their "aggravated assault" statute. *See, e.g.*, *People v. Turner*, 36 Cal.Rptr.3d 888, 889 (Cal.App. 1 Dist. 2005); *In re Peter F.*, 34 Cal.Rptr.3d 52, 53 (Cal.App. 4 Dist. 2005). And, indeed, that is obviously what it is. We hold that Sanchez's prior California conviction pursuant to California Penal Code section 245(a)(1) is a conviction for an offense that is categorically a crime of violence under the relevant definition provided in section 2L1.2 cmt. n.1(B)(iii) of the Sentencing Guidelines since that California conviction falls within the common sense definition of the enumerated offense of "aggravated assault" in its generic, contemporary meaning. We therefore affirm the district court's application of a sixteen-level crime-of-violence enhancement.

II. The Acceptance of Responsibility Reduction

Sanchez-Ruedas also contends that the district court erred in denying him a two-level reduction for acceptance of responsibility. A district court's determination as to whether a defendant has accepted responsibility is afforded great deference on review. *United States v. Chapa-Garza*, 62 F.3d 118, 122 (5th Cir. 1995) (citing *United States v. Franks*, 46 F.3d 402, 405 (5th Cir. 1995));

10

U.S.G.G. § 3E1.1 n.5. Indeed, the ruling "should not be disturbed unless it is without foundation." *United States v. Roberson*, 872 F.2d 597, 610 (5th Cir. 1989). Moreover, the defendant bears the burden of proving entitlement to a decrease in offense level for acceptance of responsibility. *United States v. Tello*, 9 F.3d 1119, 1124 (5th Cir. 1993).

The relevant sentencing guideline provision, section 3E1.1, provides for reduction of the offense level "if the defendant clearly demonstrates acceptance of responsibility for his offense." The commentary to that section advises that "this adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1(a) cmt. n.2. This court has accordingly only reversed a district court's denial of this award in cases where the defendant never contested factual guilt. *See, e.g., United States v. Washington*, 340 F.3d 222 (5th Cir. 2003) (reversing where the defendant signed a confession and was attempting only to suppress evidence).

In this case, Sanchez had a trial on the merits and a bite at the acquittal cherry. Moreover, he was warned by both the district court and his attorney that proceeding to trial would cost him the very reduction he now seeks on appeal. Because there is some foundation for the district court's ruling, we affirm the denial of

11

the reduction.[5]

## CONCLUSION

The judgment of the district court is

AFFIRMED.

---

[5]Sanchez also brings a constitutional challenge to 8 U.S.C. § 1326(b), a challenge which he acknowledges is foreclosed by *Almendarez-Torres*, 523 U.S. 224, 235 (1998), and which he raises here solely to preserve for Supreme Court review.