**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 15, 2009

Charles R. Fulbruge III
Clerk

No. 08-40519

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

CARLOS RICARDO ELLIS-GARCIA

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:07-CR-543

Before REAVLEY, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Carlos Ricardo Ellis-Garcia appeals from a judgment of conviction for being found illegally in the United States following deportation. He alleges error in his sentence. We AFFIRM.

## I. FACTS AND PROCEDURAL HISTORY

Ellis-Garcia is a citizen of Honduras. He was deported from this country first in 2004 and again in 2006. In 2007, he was found in Cameron County, Texas. On September 5, 2007, he pled guilty to being found illegally in the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

United States following deportation. 8 U.S.C. § 1326. There was no plea agreement. The propriety of his sentence is the question we face.

The U.S. Sentencing Guidelines provide a sixteen-level enhancement for defendants convicted of unlawfully reentering the United States who have a prior conviction for a crime of violence. U.S.S.G. § 2L1.2(b)(1)(A). The Presentence Report included a recommendation that Ellis-Garcia's Guidelines offense level be increased sixteen levels because he had, prior to deportation, been convicted of two crimes of violence: (1) a 1994 Montana conviction for felony assault, and (2) a 1997 Georgia conviction for robbery.

Over Ellis-Garcia's objections, the district court found each prior conviction to be for a crime of violence. The sentence imposed was eighty-two months of imprisonment and three years of supervised release.

On appeal, Ellis-Garcia argues that his sentence should be vacated because neither prior conviction was for a crime of violence.

## II. DISCUSSION

Generally, we review the district court's sentencing decisions for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). Applicable here, we review *de novo* the characterization of a prior offense as a crime of violence. *United States v. Sanchez-Ruedas*, 452 F.3d 409, 412 (5th Cir. 2006).

Under the Sentencing Guidelines, the offense of unlawfully entering the United States has a base offense level of eight. U.S.S.G. § 2L1.2 (a). If the defendant had previously been deported after having committed a crime of violence, there is a sixteen-level increase in his offense level. *Id*. § 2L1.2(b)(1)(A)(ii). The district court found Ellis-Garcia to have two convictions for crimes of violence. The increase by sixteen levels applies even if he had only one. *Id*.

A prior conviction is for a crime of violence if it satisfies either of two tests: (1) it is one of several listed "offenses under federal, state, or local law," or (2) it

is "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id*. § 2L1.2 cmt. 1(B)(iii).

To determine whether a prior conviction is for one of the listed offenses (often called "enumerated offenses," though the Sentencing Guidelines do not number them), we follow a "common sense approach." *Sanchez-Ruedas*, 452 F.3d at 412. When there is no definition of the enumerated offense in the enhancement provision, we must give the offense its "generic, contemporary meaning," without concern for the "labels employed by the various States' criminal codes." *United States v. Dominguez-Ochoa*, 386 F.3d 639, 642-43 (5th Cir. 2004) (quoting *Taylor v. United States*, 495 U.S. 575, 598, 592 (1990)).

For example, even if a prior offense is designated as "robbery" in a state penal code, it may not qualify as a robbery under Section 2L1.2. *United States v. Santiesteban-Hernandez*, 469 F.3d 376, 378 (5th Cir. 2006). In determining the "generic, contemporary meaning," we look to sources such as the Model Penal Code, certain favored treatises such as Wayne LaFave's *Substantive Criminal Law*, dictionaries, the Uniform Code of Military Justice, and other indicators of the present understanding of the offense. *Id*. at 379.

After finding the contemporary and generic elements of a crime, we compare them to the statutory elements of the prior offense and not to the actual conduct underlying the conviction. *Id*. Statutes may be written to apply to a range of conduct. It is possible that some of the means by which the statutory offense could be committed would fit within the generic, contemporary meaning of the offense and others would not. That does not end the inquiry.

Instead, when there are disjunctive elements in the statutory offense, we may look, but only with judicial blinders on, at a limited array of records in ascertaining the specific part of the statute that is the basis for the conviction. *United States v. Moreno-Florean*, 542 F.3d 445, 449 (5th Cir. 2008). Besides the

charging document, we may examine the "written plea agreement, transcript of the plea colloquy, and any explicit factual findings by the trial judge to which the defendant assented." *United States v. Bonilla-Mungia*, 422 F.3d 316, 320 (5th Cir. 2005) (quoting *Shepard v. United States,* 544 U.S. 13, 16 (2005).

As one more option, if these documents do not indicate which subpart of the statute was the basis for the conviction, we consider the entire statute to determine whether the "least culpable act constituting a violation of that statute" qualifies as a crime of violence under Section 2L1.2. *United States v. Gonzalez-Ramirez,* 477 F.3d 310, 315-16 (5th Cir. 2007).

We now apply these principles. One of the enumerated crimes of violence is "aggravated assault." U.S.S.G. § 2L1.2 cmt. 1(B)(iii). Ellis-Garcia was convicted in Montana of felony assault. The judgment recited that he had "purposely or knowingly caused bodily injury to David Robbenold with the use of a weapon by repeatedly striking him with a metal crutch." Under the Montana statute in effect at the time of the offense, felony assault occurred when a person purposely or knowingly caused:

(a) bodily injury to another with a weapon;
(b) reasonable apprehension of serious bodily injury in another by use of a weapon; or
(c) bodily injury to a peace officer or a person who is responsible for the care or custody of a prisoner.

Mont. Code Ann. § 45-5-202(2) (1973) (current version at Mont. Code Ann. § 45-5-213 (1999)). The parties do not dispute that Ellis-Garcia was convicted under subsection (a) of the statute.

The Model Penal Code ("MPC") is an approved source for determining the generic, contemporary meaning of an enumerated offense. The MPC sets out these elements for aggravated assault:

A person is guilty of aggravated assault if he: (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme

*indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.*

Model Penal Code § 211.1(2) (emphasis added).

We compare the Montana provision with the MPC. First, the MPC includes the crime of attempt in the definition of aggravated assault, while the relevant Montana subsection addressed only bodily injury actually caused. This difference is immaterial. When a statute of conviction is narrower than the MPC, its elements are within the contemporary meaning but they just do not completely fill the available range. *See Sanchez-Ruedas*, 452 F.3d at 413.

The other difference is in the description of a weapon. The MPC requires a "deadly weapon," while the Montana statute required a "weapon." The Montana Code defined a "weapon" as "an instrument, article, or substance that, regardless of its primary function, is readily capable of being used to produce death or serious bodily injury." Mont. Code Ann. § 45-2-101(71) (1973) (now Mont. Code Ann. § 45-2-101 (79) (1999)). The MPC defines "deadly weapon" as "any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury." Model Penal Code § 210.0(4). Thus, the only difference between the two is that the MPC defines the weapon by "the manner it is used or is intended to be used," while the former Montana statute defined a weapon by whether it was "readily capable of being used" "regardless of its primary function."

Whatever distinctions can be made between those definitions, we find that they are immaterial.

Further, Professor LaFave's treatise supports the conclusion that Montana's weapon definition fits with the generic definition of aggravated assault. For an aggravated assault, "the specified aggravating factor is [often]

the means used to commit the battery, such as by any weapon, or much more commonly, by what is variously called a 'deadly weapon,' 'dangerous weapon,' . . . ." WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 16.2(d) (2d ed. 2003) (citations omitted). The use of "any weapon" therefore may satisfy the aggravating factor under contemporary standards. Here, the Montana definition of "weapon" was even narrower than "any weapon," tracking more closely the MPC's definition of a deadly weapon under aggravated assault.

Finally, in applying the common-sense approach, "the fit between the enumerated offense of aggravated assault and the ordinary, contemporary, and common meaning of aggravated assault may not be precise in each and every way," but "sufficient equivalence" will still exist if the differences are slight. *United States v. Rojas-Gutierrez*, 510 F.3d 545, 549 (5th Cir. 2007).

The Montana offense of felony assault under former Montana Code Section 45-5-202(2)(a) qualified as an enumerated offense under the crime of violence enhancement of Section 2L1.2(b)(1)(A).

Because we conclude that Ellis-Garcia's sentence was properly enhanced based on his prior conviction in Montana, we do not analyze whether the Georgia conviction constitutes a crime of violence under the Sentencing Guidelines. Even if we were to find error in the characterization of the Georgia offense, it would be harmless. Fed. R. Crim. P. 52(a).

The decision of the district court is AFFIRMED.