JAMES E. GRAVES, JR., Circuit Judge: '
Guadalupe Torres-Jaime (“Torres-Jaime”) challenges the district court’s sixteen-leVel “crime of violence” sentencing enhancement pursuant tó U.S.S.G. § 2L1.2(b)(l)(A)(ii) based on his prior Georgia aggravated assault conviction. Torres-Jaime urges us to find — in -direct contrast to Fifth Circuit decisions holding otherwise — that his conviction under Georgia Code § 16-5-21(a)(2)[1] does not constitute a § 2L1.2 enumerated crime of violence. We AFFIRM the judgment of the district court.
I.
In October 2014, Guadalupe Torres-Jaime pleaded guilty, without the benefit *579 of a written plea agreement, to a single count of illegal re-entry after deportation. The Presentence Investigation Report determined Torres-Jaime’s total offense level to be twenty-one, which included a sixteen-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(l)(A)(ii) because.Torres-Jaime’s 2014 Georgia felony conviction for aggravated assault qualified as a “crime of violence’-’ within § 2L1.2. His total offense level of -twenty-one, when combined with his criminal history category of III, yielded a recommended guidelines range of fórty-six to fifty-seven months’ imprisonment.
Torres-Jaime objected to the sixteen-level enhancement, arguing that his prior Georgia aggravated assault offense was not a crime of violence under the - Guidelines. The district court overruled Torres-Jaime’s objection, downwardly departed, and sentenced him to- thirty-two months’ -imprisonment. ■ Torres-Jaime timely appealed. ■
II.
We consider this single issue: whether Torres-Jaime’s aggravated assault conviction under Georgia Code §16-5-21(a)(2) constitutes.,an enumerated crime of violence” pursuant- to U-.S.S.G. § 2L1.2(b)(l)(A)(ii). We review the district court’s interpretation or application of the Guidelines de novo, and its factual findings for clear 'error. United States v. Cisneros-Gutierrez, 517 F.3d 751, 764 (5th Cir.2008).
Section 21)1.2 of-the Sentencing Guidelines provides that the offense level for unlawfully entering or remaining in the United States shall be increased by sixteen levels if the defendant has a prior conviction for! a crime of ' violence. See § 2L1.2(b)(l)(A)(ii). The commentary to § 2L1.2 defines “crime of violence” as (1) any specific enumerated offense, including “aggravated assault” or (2) -“any other offense under federal, state, or local law that has as an element the use,-attempted use, or threatened use of physical force against the person of another.” § 2L1.2, comment. (n. l(B)(iii)).
We use different tests “when analyzing whether a particular offense amounts to a [crime of violence], and the test used depends on whether the offense is an enumerated one or has physical force as an element.” United States v. Moreno-Florean, 542 F.3d 445, 449 (5th Cir.2008). Because the state crime at issue is the enumerated offense of “aggravated assault,” we apply a “common sense” approach that looks to the “generic, contemporary' meaning” of an offense listed in § 2L1.2 to assess whether the offense of conviction amounts to an enumerated offense. United States v. Esparza-Perez, 681 F.3d 228, 229 (5th Cir.2012). To determine this “plain, ordinary meaning,” we look to various sources including the Model Penal Code,'Professor LaFave’s- Substantive Criminal Law treatise, modern state statutes, and legal dictionaries. United States v. Mungia-Portillo, 484 F.3d 813, 816 (5th Cir.2007); see Esparza-Perez, 681 F.3d at 229. “When comparing the state conviction with the generic, contemporary meaning of the crime, we examine the elements of the statute of conviction rather than the specifics of the defendant’s conduct. We look only to the particular subdivision of the statute under which the defendant was convicted.” United States v. Fierro-Reyna, 466 F.3d 324, 327 (5th Cir.2006) (citation omitted).
■ If the defendant was convicted under a statute that is “narrower than' the generic crime” or that mirrors the generic definition with only “minor variations,” the ■enhancement may stand. United States v. *580 Herrera, 647 F.3d 172, 176 (5th Cir.2011). But if the statute of conviction “encompasses prohibited behavior that is not within the plain, ordinary meaning of the enumerated offense, the conviction is not a crime of violence as a matter of law.” Esparza-Perez, 681 F.3d at 230 (internal quotation marks omitted).
Moreover, under the common sense approach, “if the statute of conviction contains a series of disjunctive elements, this court may look beyond the statute to certain records made or used in adjudicating guilt to determine which subpart of the statute formed the basis of the conviction.” Moreno-Florean, 542 F.3d at 449; see Mungia-Portillo, 484 F.3d at 815. Qualifying records “are ‘generally limited to .., the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.’ ” United States v. Herrera-Alvarez, 753 F.3d 132, 138 (5th Cir.2014) (quoting Shepard v. United States, 544 U.S. 13, 16, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005)). If such Shepardrcompli&xit documents cannot narrow the conviction, we determine whether the “least culpable act constituting a violation of that statute” necessarily entails the use of force, or constitutes the enumerated offense. United States v. Gonzalez-Ramirez, 477 F.3d 310, 315-16 (5th Cir.2007).
The State’s indictment charged Torres-Jaime with violating Georgia Code § 16-5-21. Under Georgia law, a person commits an aggravated assault' when he assaults:
(1) With intent to murder, to rape, or to rob;
(2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely, to or actually does result in serious bodily injury; or
(3)A person or persons without legal justification by discharging a firearm from within a motor vehicle .toward- a person or persons. -
Ga.Code § 16-5-21(a) (2013). In order to commit an aggravated assault under Georgia law, a person must also commit the offense of simple assault. Guyse v. State, 286 Ga. 574, 690 S.E.2d 406, 409 (2010). A person commits- a simple assault when he either “(1) [attempts to commit a violent injury to the person of another; or (2) [cjommits an act which places another in reasonable apprehension of immediately receiving a violent injury,” Ga.Code § 16-5-20(a) (2015).
. .Here, the indictment charges a violation of § 16-5-21, but does not specify the particular simple assault subsection, § 16-5-20(a)(l) or .§ 16-5-20(a)(2), under which Torres-Jaime was convicted. Torres-Jaime asserts that the court must analyze it as an aggravated assault under subpart (a)(2) of Georgia’s simple assault statute because this is the “least culpable act constituting a violation of the statute.” See Gonzalez-Ramirez, 477 F.3d at 315-16. The Government maintains, however, that Torres-Jaimé’s indictment reflects the subsection language of § l-6-5-20(a)(l), attempting to, “commit a violent injury.”
■In exploring this critical determination, we look to Torres-Jaime’s : Shepard-approved charging document. See Shepard, 544 U.S. at 25, 125 S.Ct. 1254; United States v. Rodriguez, 711 F.3d 541, 549 n. 8 (5th Cir.2013). The State of Georgia indictment. charged Torres-Jaime-with aggravated assault and alleged that:
On August 8, 2013, Torres-Jaime ■ “did unlawfully make an assault upon‘.-the person- of Marten Tzun, driver[,]‘ and Leidi Latin-Garcia, passenger[,] with his 2000 Chevrolet Express Van, an instrument which when- used offensively against -a person is likely to result in *581 serious bodily injury by repeatedly ramming into Marten Tzun’s 2006 Nissan Pathfinder with said Chevrolet Express Van....
The judgment indicates that Torres-Jaime pleaded guilty to “[aggravated assault” and was given an eight-year felony'sentence, which was probated.
Oúr analysis leads us, first, to' conclude that the description of Torres-Jaime’s conduct, as quoted above, unquestionably tracks the aggravated assault language of § 16-5-21(a)(2). Accordingly; we look only to subsection (a)(2) to determine whether the statute of conviction should be classified as a crime of violence. See Es-parzcir-Perez, 681 F.3d at 231. Additionally, the language of Torres-Jaime’s indictment expressed above more closely tracks the language for simple , assault under § 16-5-20(a)(l). To reiterate,. Torres-Jaime was charged with “makfing] an assault upon the [victims] ... with his 2000 Chevrolet Express Van” that was “likely to result in serious bodily injury.” It is true that this qualifying record does not expressly specify the statutory subsection; but, it does demonstrate the manner in which Torres-Jaime acted, by repeatedly ramming his vehicle into that of his victims, and suggests what his mens rea may have been. Thus, it appears that his aggravated assault charge falls under sub-part (1) of the statute, i.e., that Torres-Jaime “attempted to commit a violent injury to the person of another,” rather than subpart (2), which requires the commission of “an act which places another in reasonable apprehension of immediately receiving a violent injury.”
Having narrowed Torres-Jaime’s conviction, we return to the question of whether Torres-Jaime’s aggravated assault conviction constitutes a crime of violence for purposes of § 2L1.2(b)(l)(a)(ii). Notably, Torres-Jaime does not challenge any determination that a conviction for aggravated’.assault with a deadly weapon .under § 16-5-21(a)(2), where the predicate assault is committed under § 16-5-20(a)(l), constitutes a crime of violence for purposes of § 2L1.2(b)(l)(a)(ii). Instead, his argument on appeal is grounded in subpart (2) of the Georgia assault statute (as incorporated' into the aggravated assault statute), which, he contends, proscribes conduct outside the common, contemporary definition of “aggravated assault.” More specifically, he asserts that, under § 16-5-20(a)(2), unlike the ■ Model Penal Code’s definition of aggravated' assault, the Georgia offense of aggravated assault with' a deadly weapon does not require an intent to injure. Torres-Jaime argues that the Georgia offense does not constitute generic aggravated assault because it does not re: quire proof that the defendant intentionally or knowingly caused 'or attempted to cause bodily injury. See Dunagan v. State, 269 Ga. 590, 502 S.E.2d 726, 730 (1998), overruled on other grounds by Parker v. State, 270 Ga. 256, 507 S.E.2d 744 (1998) (holding that to prove the use of a deadly or offensive weapon that put the victim in a reasonable apprehension of immediately receiving a violent injury, the State must prove the intent .to commit the act of using a deadly or offensive weapon, not an intent to make the victim apprehensive). . •
We do not agree, especially 'having already determined that the conduct described in Torres-Jaime’s indictment places his conviction squarely under § 16-5-20(a)(l). Thus, we need not consider Torresr-Jaime’s arguments, requiring that we shift our focus to the “least culpable” means of committing aggravated assault under Georgia law. But, even if we did consider them, his arguments are still unavailing.
*582 We have identified the Model Penal Code as our “primary source for the ordinary meaning” of aggravated assault. United States v. Hernandez-Rodriguez, 788 F.3d 193, 197 (5th Cir.2015). The Model Penal Code defines “aggravated assault” as occurring when.a person “/attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life’ ” or “ ‘attempts to cause or purposely or knowingly causes bodily injury to another with a , deadly weapon.’ ” Id. (quoting Model Penal Code § 211.1(2)(a), (b)). “Deadly weapon” is defined by the Model Penal Code as “any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury.” Model Penal Code- § 210.0(4). “Looking also to other approved sources, we have noted that,‘[t]he generic, contemporary meaning of aggravated assault is an assault carried out under certain aggravating circumstances,’ and that ‘[ajssault, in turn, requires proof that the defendant either caused, attempted to cáiise, or threatened to cause bodily injury or offehsive contact to another person.’ ” Hernandez-Rodriguez, 788 F.3d at 197 (quoting Esparza-Perez, 681 F.3d at 231 (citing, inter alia, Black’s Law Dictionary 130 (9th ed.2009); Wayne R. LaFave, 2 Substantive Criminal Law § 16.3 (2d ed.2014))).
We have held in a series of unpublished decisions that the Georgia- offense of aggravated assault is a crime of violence under § 2L1.2. See United States v. Soto-Romero, 491 Fed.Appx. 481, 482 (5th Cir.2012); United States v. Gonzalez-Flores, 228 Fed.Appx. 491, 491-92 (5th Cir.2007); see also United States v. Hyr-tado, 551 Fed.Appx. 161, 162 (5th Cir.2014) (analyzing whether the Georgia offense of aggravated assault was a crime of violence under U.S.S.G. § 2K2.1). Unpublished opinions, although not precedential, may.be considered persuasive authority. See Ballard v. Burton, 444 F.3d 391, 401 & 401 n. 7 (5th Cir.2006). We are persuaded -that each decision, upon comparison of the Georgia crime and the generic crime under the common sense approach, confirms that .Torres Jaime’s conviction qualifies as a . crime of violence under § 2L1.2.
In Gonzalez-Flores, the defendant argued that his Georgia aggravated assault cbnviction did not constitute a crime of violence under §-2L1.2(b)(l)(A)(ii). 228 Fed.Appx. at 491. We used a “common sense approach,” and “h[e]ld-that the generic, contemporary meaning of the offense of aggravated assault includes the intentionally-caused apprehension of injury, 2 W.R. LaFave & A. Scott, Substantive Criminal Law, § 16,3 (2d ed.2005), and that Gonzalez’s Georgia offense f[ell] within that generic, contemporary meaning.” Id. (citing United States v. Santiesteban-Hernandez, 469 F.3d 376, 378-79 (5th Cir.2006), abrogated on other grounds by-Rodriguez, 711 F.3d at 554-55; United States v. Sanchez-Ruedas, 452 F.3d 409, 411, 414 (5th Cir.2006)).
In Soto-Romero, the defendant argued that his Georgia aggravated assault .conviction was not a crime of violence under § 2L1.2(b)(l)(A)(ii)' because it was not an enumerated offense and it did not implicate § 2L1.2’s “use of force” prong. 491 Fed.Appx. at 482. Under plain error review, we again held that “[ujsing a ‘com-moh sense ■ approach,’ .. .■ the generic, contemporary meaning of the offense of aggravated assault includes the intentionally-caused apprehension of injury,” and concluded “that Soto-Romero’s Georgia *583 offense f[ell] within that generic, contemporary meaning.” Id. (citing Santiesteban-Hernandez, 469 F.3d at 378-79; Sanchez-Ruedas, 452 F.3d at 411, 414).[2]
In Hyrtado, the defendant argued that his Georgia aggravated assault convictions were not crimes of violence under U.S.S.G. § 2K2.1. 551 Fed.Appx. at 161. For an offense to qualify as a crime of violence under § 2K2.1, it must either “(1) contain as a statutory element the use, attempted use, or threatened use of physical force against the person of another; (2) belong to the list of enumerated, offenses; (3) or fall under the residual clause of [U.S.S.G.] § 4B1.2(a)(2) by presenting a serious risk of physical injury to another.” See Hyrtado, 551 Fed.Appx. at 162 (internal quotations marks omitted). The list of enumerated offenses includes “aggravated assault.” U.S.S.G. § 4B1.2, comment, (n. 1.).
Reviewing the issue under the plain error standard of review, we stated that we had “not previously addressed whether the statute of conviction, Ga.Code § 16-5-21(a)(2), [wa]s a [crime of violence].” Hyrtado, 551 Fed.Appx. at 162. After reviewing the statute, we concluded that any differences between the statute. and the “generic, contemporary definition of ‘aggravated assault’ ” were “immaterial,” and therefore Hyrtado’s convictions were crimes of violence because they belonged to the list of enumerated offenses. Id. (citing Esparza-Perez, 681 F.3d at 231—32; United States v. Rojas-Gutierrez, 510 F.3d 545, 549 n. 5 (5th Cir.2007)). We alternatively concluded that the convictions were crimes of violence under the residual clause of § 4B1.2, comment, (n. 1). Id.
Torres-Jaime urges that we disregard the foregoing unpublished opinions because the issue was reviewed for plain error in Soto-Romero and Hyrtado, because none of the decisions indicate whether the court addressed the issues raised in the instant appeal, and because none of the opinions provide analysis for the conclusions reached. That is not the case.
Delving just below , the opinions’ surfaces (i.e., considering the Fifth Circuit precedent "and sources cited therein), the reasoning for those decisions can be extrapolated from their citations to Professor LaFave’s treatise, Santiesteban-Hernandez, and Sanchez-Ruedas. See Soto-Romero, 491 Fed.Appx. at 482; Gonzalez-Flores, 228 Fed.Appx. at 491. In Santies-tebarir-Hemandez, we stated that the sources of generic,, contemporary meaning for the enumerated offenses include treatises. 469 F.3d at 379. According to 2 W.R. LaFave & A. Scott, Substantive Criminal Law, § 16.3 (2d ed.2015),
[t]he-¡principal question concerning the crime of assault [is] whether it . is to be limited to the'situation of the attempted battery (requiring an actual intent to cause a physical injury, not just an apprehension of such-an injury); or whether it should include, in addition, the civil-assault situation of the intentionally-caused apprehension of injury.
The treatise further provides that “[t]he weight of authority, fortified by the modern trend, is to include the latter situation as well as the former in the scope of the crime of assault.” 2 W.R. LaFave & A. Scott, Substantive Criminal. Law, § 16.3 *584 (2d ed.2015). Consequently, we concluded in Gonzalez-Flores and Soto-Romero that the generic, contemporary meaning of aggravated assault included the intentionally caused apprehension of injury. See Soto-Romero, 491 Fed.Appx. at 482; Gonzalez-Flores, 228 Fed.Appx. at 491.
Our analyses in those prior decisions also rested, in part, on Sanchez-Ruedas. See Soto-Romero, 491 Fed.Appx. at 482; Gonzalez-Flores, 228 Fed.Appx. at 491. In Sanehez-Ruedas, we held that the “subtle difference” between the Model Penal Code’s mens rea attaching, to the “serious bodily injury requirement” and the California statute’s focus on the defendant’s intentional conduct, and not the ultimate result, was insufficient to remove the Cáli-fornia statute from the commonly defined term “aggravated assault.”[3] 452 F.3d at 414. We explained that the California statute at issue proscribed “‘willfully or purposefully’ attempting ‘violent injury* (which California defines as ‘the least touching1) committed by any means of force likely to produce great bodily- injury.” Id. (quoting People v. Colantuono, 7 Cal.4th 206, 26 Cal.Rptr.2d 908, 865 P.2d 704, 709 (1994)). “Thus, in California, the defendant need not specifically intend great bodily injury, but need only intentionally engage in conduct- that will likely produce that.” Sanchez-Ruedas, 452 F.3d at 414 (citing Colantuono, 26 Cal.Rptr.2d 908, 865 P.2d at 709 (providing that although, under the California assault statute, the defendant “must intentionally engage in conduct that will likely produce injurious consequences, the prosecution need not prove a specific intent to inflict a particular harm”)). Thus, in Gonzalez-Flores and Soto-Romero we concluded that the Georgia statute’s focus on the defendant’s intentional conduct as opposed to his intended result would not preclude the offense of conviction from falling within the contemporary, ordinary meaning of aggravated assault. . See Soto-Romero, 491 Fed.Appx. at 482; Gonzalez-Flores, 228 Fed.Appx. at 491.
Torres-Jaime, however, points to our recent published opinion in Hernandez-Rodriguez, 788 F.3d 193 (5th Cir.2015), as intervening authority and urges us to find that case instructive here. We - do not.
In Hemandez-Rodriguez, the defendant challenged a sixteen-level § 2L1.2(b)(l')(A)(ii) enhancement to his offense level based upon his prior Louisiana conviction for aggravated battery, which could be committed by, inter alia, intentionally administering poison. 788 F.3d at 194, 196. The defendant argued that the Louisiana statute was broader than the generic, contemporary definition of aggravated assault because the Louisiana offense was one of general intent, while the generic offense of aggravated assault required a showing of specific intent. Because the criminal intent under Louisiana law attached to the defendant’s conduct (i.e., the intentional usé of force or administration of poison) rathér than to the result of that conduct (i.e., causing bodily injury), and the opposite was true of the generic offense, he argued that his conviction did not qualify as a crime of violence. Id. at 197.
*585 Upon review, we concluded that the least culpable means of committing aggravated battery under Louisiana law, which involved the administration of poison, involved conduct beyond the scope of the generic, contemporary meaning of aggravated assault. Id. at 198. We determined that the Louisiana offense did not require the infliction of, serious bodily -injury or the intent to inflict serious injury while the Model Penal Code “require[d] specific intent to cause bodily injury.” Id. Moreover, with respect to the deadly weapon alternative, the defendant, under the Model Penal Code, had to either “attempt to cause” or “purposely or knowingly cause” bodily injury. Id. .
In so holding, we rejected the government’s argument that the intent to cause bodily injury could be inferred from the use of a dangerous weapon that, in the manner used, was likely to produce death or bodily harm because Louisiana law did not require that the defendant specifically intend the result. Id. at 199. We also rejected the government’s argument that the differences between the Louisiana statute and the Model Penal Code were minor such that the Louisiana statute still fell within the generic, contemporary meaning of aggravated assault. Id. at 199-200. We acknowledged that, in Sanchez-Rue-das, we concluded that the difference between the California statute’s focus on intentional conduct and the Model Penal Code’s focus on the intentional result did not remove the California statute from the generic, contemporary meaning of aggravated assault. Id. But, we distinguished the Louisiana aggravated battery statute at issue in Hemandez-Rodñguez from the California offense of assault with a deadly weapon at issue in Sanchez-Ruedas by noting that the California statute had not been interpreted as broadly as the Louisiana statute. Id. at 200.
Several distinctions between Heman-dez-Rodñguez and the present case result in its inapplicability here. First, Torres-Jaime provides no evidence that the Georgia statute is interpreted and applied as broadly as the Louisiana statute that we examined in Hemandez-Rodñguez — i.e., such that the Georgia statute would apply to the “administration of a .noxious substance” committed without intended physical force. We find such an application unlikely because even considering the Georgia statute' most • broadly, it allows only for the “act of ‘using an instrument offensively.” Thus, there is no reason to believe that' the “non-violent administration of poison” would' qualify as1 the offensive' -use of an: instrument under Georgia’s statute (the statutory language of § 16-5-21(b)(2),; which .reads “[w]ith a deadly weapon or with any object, device, or instrument”). Rather than controlling the present case, . / Hemandez-Rodñguez is more analogous to our holding in Esparzan-Perez, which determined that there were material differences between the Model Penal Code and Arkansas’s aggravated assault statute — which made it a crime to purposely engage in conduct that creates a substantial danger, under circumstances that “manifest[] extréme indifference to the value of human life.” See Esparza-Perez, 681 F.3d at 232. Here, the statute when read in combination with the dangerous weapon requirement establishes sufficiently similar criminal intent to satisfy the common •' sense test; any differences be-twéen the statutes amount to minor varia--tions that ■ do not preclude a finding of equivalence.
Accordingly, we hold that Torres-Jaime’s conviction fór Géorgia aggravated assault qualifies as a crime of violence under § 2L1.2.
III.
For the foregoing reasons, the judgment of the district court is AFFIRMED.

. This subsection is now numbered § 16 — 5— 21(b)(2). See Ga.Code §'16-5-21 (2015). This opinion continues to refer to § 16 — 5— 21(a)(2), the designation of the statute as it existed at the time of'Torres-Jaime’s conviction.

. Notably, the charging language of- Torres-Jaime’s indictment parallels the charging language in SotOrRomero, which stated that the defendant “did unlawfully make an assault upon the [victim] ... with an object, device and instrument, to wit: a beer bottle, which when used offensively against a person is likely to and actually did result in serious bodily injury.” There, we held, as'we. hold here, that the Georgia offense-of aggravated assault is a crime of violence under § 2L1-.2.

. The California statute read: "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state- prison for two, three, or four years, or in a county jail not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment.” See Sanchez-Ruedas, 452 F.3d at 413 (footnote omitted). p "Assault” was defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." See id. at 413 n. 4.