# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 31, 2025

Lyle W. Cayce
Clerk

No. 24-20258

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

BRANT DAVIS,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CR-472-1

Before DENNIS, HAYNES, and ENGELHARDT, *Circuit Judges*.
PER CURIAM:[*]

Pursuant to a stipulation of facts presented at a bench trial, the district court found defendant Brant Davis guilty of being a felon in possession in violation of 18 U.S.C. § 922(g)(1). Davis appeals, contending, *inter alia*, that § 922(g)(1) violates the Second Amendment as applied to him. Because his criminal record establishes a history of misusing firearms to the danger of

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-20258

others, we disagree. Section 922(g)(1) comports with our Nation's history and tradition as applied to Davis. We therefore AFFIRM.

I

In the early morning hours of September 8, 2023, Davis rode in the front passenger seat of a black SUV traveling at high speeds. He was drunk, listening to music, and playing with a firearm when it inadvertently "went off." A bullet (presumably from the firearm) happened to strike the vehicle of an FBI agent who was conducting surveillance unrelated to Davis. The SUV proceeded to an apartment complex. Agents procured video surveillance from the complex that showed Davis exiting the SUV a minute later with a black pistol in his right hand. Later that day, agents again observed the SUV at the complex with Davis in the front passenger seat. They detained him, and he advised there was a gun in the vehicle. Agents recovered a pistol between Davis's seat and the passenger door.

A grand jury returned a one-count indictment charging Davis with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Davis moved to dismiss the indictment. He argued that § 922(g)(1) is unconstitutional on its face and as applied to him under the Second Amendment. He also contended that § 922(g)(1) violates the Commerce Clause. The district court denied the motion without further analysis.

Prior to his bench trial, Davis admitted that he had "one or more felony conviction[s] including a conviction for Forgery of a Financial Instrument" and stipulated to facts suggesting that he was in possession of the firearm at issue. Based on the stipulation, the district court found Davis found guilty as charged.

Davis appeals, reasserting the arguments raised in his motion to dismiss. Because his facial challenges under the Second Amendment and the Commerce Clause are foreclosed by our precedent, we address only his

argument that § 922(g)(1) violates the Second Amendment as applied to him. *See United States v. Diaz*, 116 F.4th 458, 471–72 (5th Cir. 2024) (rejecting Second Amendment challenge); *United States v. Perryman*, 965 F.3d 424, 426 (5th Cir. 2020) (rejecting Commerce Clause challenge). As he preserved this argument below, we review his constitutional challenge to § 922(g)(1) de novo. *United States v. Howard*, 766 F.3d 414, 419 (5th Cir. 2014).

## II

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. To overcome this "unqualified command," the government must demonstrate that its regulation of conduct covered by the Second Amendment's plain text "is consistent with this Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022). To satisfy its burden, the government must point to a historical analogue that is "relevantly similar" to the modern law. *Id.* at 29. "Why and how the regulation burdens the right are central to this inquiry." *United States v. Rahimi*, 602 U.S. 680, 692 (2024). Modern laws that impose "similar restrictions for similar reasons" within a similar scope to laws at the founding or when the Fourteenth Amendment was ratified[1] will generally pass constitutional muster. *Id.*

Section 922(g)(1) regulates possession of firearms by any person "who has been convicted in any court of[] a crime punishable by

---

[1] The Supreme Court has acknowledged—but has not resolved—the "ongoing scholarly debate on whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope (as well as the scope of the right against the Federal Government)." *Bruen*, 597 U.S. at 37. Because *Rahimi* decisively resolves this case, we need not opine on the relevant timeframe here. *See Rahimi*, 602 U.S. at 692 n.1.

imprisonment for a term exceeding one year." As evidenced by its precursor, § 922(g)(1) exists to keep "firearms out of the hands of those who are 'a hazard to law-abiding citizens' and who ha[ve] demonstrated that 'they may not be trusted to possess a firearm without becoming a threat to society.'" *United States v. Diaz*, 116 F.4th 458, 469 (5th Cir. 2024) (quoting 114 CONG. REC. 14773 (daily ed. May 23, 1968) (statement of Sen. Russell Long of Louisiana)). Section 922(g)(1) achieves this end by permanently disarming felons. *Diaz* held that not every felony is sufficient under the Second Amendment. *See id.* at 469 ("Simply classifying a crime as a felony does not meet the level of historical rigor required by *Bruen* and its progeny."). Instead, we look to history and tradition. *Id.*

The parties dispute whether Davis's "predicate conviction"—forgery by way of cashing bank checks intended for another person—is similar to a founding-era felony punishable by death or no crime at all.[2] But this singular focus on the predicate offense ignores Davis's criminal history, which is replete with convictions of crimes punishable beyond one year.[3] *See*

_____

[2] The en banc court of the Third Circuit recently held that crimes akin to founding-era forgery are likely insufficient to justify disarmament under the Second Amendment. *Range v. Att'y Gen. United States*, 124 F.4th 218, 231 (3d Cir. 2024) (en banc). In *Range*, the defendant's sole crime was making a false statement on an application for food stamps. The court explained that the proffered analogue—founding-era forgery—was initially punishable by death, but by the early Republic, many states changed their laws to permit "lesser punishments." *Id.* at 231. Therefore, even if the defendant's false statement were similar to forgery, permanent disarmament would not be supported by the Nation's history and tradition. *Id.* We need not express a view on whether Davis's forgery has a founding analogue supportive of disarmament, however, because his history—unlike Range's—is not limited to forgery. Whereas Range's relevant criminal record "contain[ed] no evidence that [he] pose[d] a physical danger to others," Davis's relevant criminal history, especially misuse of firearms, demonstrates the opposite. *Id.* at 232. For this reason, *Range*, though helpful in its discussion of forgery at the founding, does not guide our analysis.

[3] Davis contends that the government forfeited any argument about his broader criminal record and how that may impact analysis of his § 922(g)(1) conviction under the Second Amendment. We disagree. "Because the Second Amendment analysis is a legal

No. 24-20258

*United States v. Bullock*, No. 23-60408, 2024 WL 4879467, at *1 (5th Cir. Nov. 25, 2024) (considering defendant's "numerous felony convictions" tracing back to 1994); *United States v. Collette*, No. 22-51062, 2024 WL 4457462, at *2 (5th Cir. Oct. 10, 2024) (considering defendant's "criminal history . . . consisting only of his prior convictions . . . punishable by more than one year of imprisonment").[4] Setting aside his arrests, pending charges, misdemeanors, crimes for which there was insufficient information—battery, aggravated assault, and family violence—and forgery, Davis's relevant convictions punishable by one year or more include: juvenile robbery, aggravated unlawful use of a weapon/vehicle, and unlawful possession of a weapon by a felon under state law. Notably, his aggravated unlawful use of a weapon conviction involved facts quite similar to this case—passing around a gun in a parked car. Upon the officers' arrival, a gun was found to be loaded and in Davis's possession. Disarming someone with this criminal history—in particular, misusing weapons—is consistent with this Nation's history and tradition and necessary for safety.

"From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others." *United States v. Rahimi*, 602 U.S. 680, 693 (2024); *see also Bullock*, 2024 WL 4879467, at *1. Consistent with this history, when a court finds that an "individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Rahimi*, 602 U.S. at 693. That is precisely the case here. At sentencing, the district court emphasized

_____

inquiry into the text and history related to the relevant regulation, the government may provide additional legal support for its arguments on appeal." *United States v. Bullock*, No. 23-60408, 2024 WL 4879467, at *1 (5th Cir. Nov. 25, 2024).

[4] "Unpublished opinions, although not precedential, may be considered persuasive authority." *United States v. Torres-Jaime*, 821 F.3d 577, 582 (5th Cir. 2016).

Davis's history of misusing of firearms and the risk he posed to the community. The court stated Davis brandished firearms such that "[i]nnocent people like your daughters and your fiancée are going to get killed." And in this particular case, "[a]gents could have gotten killed." The district court emphasized that this was "not . . . [his] first time" engaging in this kind of conduct. In the court's view, this was not a "run [of] the mill" gun case but a continuation of Davis's past behavior, resulting in Davis brandishing a weapon that "could have killed someone." Apparently Davis's "past incarcerations didn't deter [him] enough [from] engag[ing] in this conduct." The court therefore determined that an upward variance was warranted "to deter [him] . . . from making the same decisions that [he] made to put our lives and the lives of our families at risk."

Because the district court—supported by Davis's prior convictions—determined that Davis's misuse of firearms presents a clear threat to others, § 922(g)(1) is constitutional as applied to him. We AFFIRM.